IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2008 MAR 17  A 10: 53

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

THE PRIME INSURANCE SYNDICATE,
INC.,

    Plaintiff,

vs.

CLAUDE J. ZITO d/b/a LEVEL ACRES
MOBILE HOME ESTATES, EPA, LLLP d/b/a
LEVEL ACRES MOBILE HOME ESTATES,
LEVEL ACRES MOBILE HOME ESTATES,
BERNIE KEYS, and KATIE KEYS,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

cv 2:08cv185-WKW

## COMPLAINT FOR DECLARATORY JUDGMENT

### I. JURISDICTION.

1.    Plaintiff The Prime Insurance Syndicate, Inc. is an insurance company incorporated in the State of Illinois with its principal place of business in the State of Utah.  Therefore, The Prime Insurance Syndicate, Inc. is a citizen of the State of Illinois and the State of Utah.

2.    Defendant Claude J. Zito d/b/a Level Acres Mobile Home Estates, upon information and belief, is a resident citizen of the State of Georgia.

3.    Defendant EPA, LLLP d/b/a Level Acres Mobile Home Estates, upon information and belief, is an entity doing business in Eufaula, Alabama at 1253 Eufala, Alabama, and is not believed to be a citizen of the State of Illinois or the State of Utah.

4.    Defendant Level Acres Mobile Home Estates, upon information and belief, is an entity doing business in Eufaula, Alabama at 1253 Eufaula, Alabama 30627, and is not believed to be a citizen of the State of Illinois or the State of Utah.

5.    Defendant Bernie Keys, upon information and belief, is a resident citizen of the State of Alabama.

6.    Defendant Katie Keys, upon information and belief, is a resident citizen of the State of Alabama.

7.    This action is a matter of which the United States District Court has jurisdiction in that the controversy is wholly between citizens of different states. Jurisdiction is based upon complete diversity of citizenship and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs in compliance with 28 U.S.C. § 1332. This action is further based upon 28 U.S.C. § 2201 which provides that this Court, upon the filing of an appropriate pleading, may declare the rights and legal relations of any interested party seeking such a declaration.

8.    This declaratory judgment action arises out of an action styled Bernie Keys, et al. v. Level Acres Mobile Home Estates, CV-07-49, pending in the Circuit Court of Barbour County, Alabama, Eufaula Division.

2

9.    The Prime Insurance Syndicate, Inc. seeks a declaration from this Court that it has no duty to defend and/or indemnify the entity identified in the underlying state court allegation as "Level Acres Mobile Home Estates" with respect to the claims asserted by Bernie and Katie Keys.  Such coverage issues should be determined by this Court in order to determine the rights and liabilities of the parties.

## II.  FACTS.

10.    Plaintiff The Prime Insurance Syndicate, Inc. issued a claims made policy of insurance to Claude J. Zito d/b/a Level Acres Mobile Home Estates, Policy No.: CP0603191 for a policy period of March 3, 2006 to March 3, 2007, with a retroactive date as March 3, 2006.

11.    The Commercial Liability Insurance Policy, PCL-00-01, provides in pertinent part as follows:

> THIS COMMERCIAL LIABILITY INSURANCE POLICY (the 'Policy") is a manuscript policy, meaning it is a negotiated agreement entered into by and between the Insured and the Insurer, and as such it differs significantly from claims made or occurrence-type general liability policies offered by other insurance companies which, in most instances are approved by state regulatory authorities.  The terms of this Policy are contractual and are not merely recitals, and the Policy shall be construed as a whole, including all paragraphs, sections, conditions, provisions, exclusions, and Endorsements.  Additionally, this Policy has very strict claims reporting requirements, and all application(s), discovery form(s), warranty form(s), and other forms completed by the insured to obtain coverage form a part of this Policy and constitutes warranties of the Insured to the Insurer.
>
> Generally, coverage is provided hereby only for otherwise covered Claims (as more fully set forth in the Policy):

3

(1)    Which are first made against an Insured during the Policy Period, and

(2)    Which result from an Accident occurring during the Policy Period, and

(3)    For which written notice is given to the Insurer during the Policy Period.

In addition, coverage is strictly limited to those activities and operations and at those locations listed, described, and defined herein. Various other provisions of this Policy restrict and limit the coverage provided. Please read the entire Policy and all Endorsements carefully to determine your rights and duties and what is and is not covered.

12.    Section I - Coverage, Part A, Insuring Agreement provides in pertinent

part:

1.    Subject to all of the terms, limitations, conditions, definitions, exclusions, and other provisions of this Policy, we will pay Damages in excess of any SIR that you are legally obligated to pay because of Bodily Injury or Property Damage to which this Policy applies:

a.    Should an Accident causing Bodily Injury or Property Damage result from those specified activities or operations to which this Policy is limited; and

b.    If such Accident occurs during the Policy Period (including any Policy Period extended by a specifically identified Retroactive Date) stated on the Declarations within the United States of America or its territories; and

c.    A Claim arising out of an Accident is made against you and reported to us in writing during the Policy Period and any applicable SIR has been timely paid.

The date of an Accident is the date upon which an Accident that results in Bodily Injury or Property Damage occurs regardless of when the Bodily Injury or Property Damage is first discovered or first manifest or reported. Claims arising from Accidents occurring prior to the coverage date of the Policy are

4

not covered regardless of when Damages are first manifest or discovered.

2.    We have both the right and the duty to provide for your defense with respect to a Claim covered by the Policy. We have the exclusive right to designate and appoint legal counsel to represent you and to otherwise control such defense. Notwithstanding anything to the contrary, our duty to provide for such defense will immediately terminate:

a.    When the applicable Limits of Liability of the Policy are exhausted by payment of Damages and/or Claim Expenses;

b.    If the Insured fails to fulfill any SIR obligation imposed by this Policy in a timely manner;

c.    If the Application attached hereto and forming a part hereof, including any supplemental information related thereto, is discovered by us to contain any material inaccuracies, omissions, mistakes, misrepresentations, false statements or errors of fact, regardless of whether the misrepresentation was a result of the Insured's insurance broker or agent's errors of omission, commission, mistake, negligence, fraud, or criminal conduct; or

d.    If you violate any of the conditions set forth in this Policy.

13.    Part B. of Section I - Coverages, contains the Exclusions to the Policy. Exclusion 8 provides that the policy does not cover, and Prime Insurance Syndicate will not be obligated to defend the insured against or pay Damages on the insured's behalf for Personal Injury.

14.    Exclusion 16 provides that the policy does not cover, and Prime Insurance Syndicate will not be obligated to defend the insured against or pay Damages on the insured's behalf for:

5

Bodily Injury or Property Damage directly or indirectly resulting from acts, treatments, services, lack of services, errors or omissions, or other actions provided by the Insured outside of the Policy Period regardless of when any Injury or Damages manifests itself or is first discovered.

15.    Exclusion 18 provides that the policy does not cover, and Prime

Insurance Syndicate will not be obligated to defend the insured against or pay

Damages on the insured's behalf for any Claim related to, caused by, or arising

from Pollution including, but not limited to:

a.    Bodily Injury or Property Damage arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants at anytime;

(1)    At or from any premises, site, or location that is or was at anytime owned or occupied by, or rented, or loaned to any Insured; or

(2)    At or from any premises, site, or location which is or was at anytime used by or for any Insured or others for the handling, storage, disposal, processing, or treatment of waste or Pollutants; or

(3)    Which are or were at anytime transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom any Insured may be legally responsible; or

(4)    At or from any premises, site, or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations:

(a)    If the Pollutants are brought on or to the premises, site, or location in connection with such operations or work performed by such Insured, contractor or subcontractor; or

(b)    If the operations are to test for, monitor, clean up,

6

remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of Pollutants.

b.    Any loss, cost, or expense arising out of any:

(1)    Request, demand, or order (including consent decrees, consent orders, or administrative procedures) that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants; or

(2)    Claim or Suit by or on behalf a governmental authority seeking recovery for testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Pollutants.

This Pollution Exclusion applies to discharge, dispersal, seepage, migration, release, or escape, within a building or in the atmosphere, of Pollutants at or from any premises regardless of whether or not owned, rented, occupied, or controlled by an Insured.

16.    Exclusion 19 provides that the policy does not cover, and Prime Insurance Syndicate will not be obligated to defend the insured against or pay Damages on the insured's behalf for any Claim related to, caused by, or arising from Hazardous Materials including, but not limited to:

a.    The handling, storage, disposal, processing, treatment, or releasing or exposure to Hazardous Materials.

b.    Any loss, cost, or expense arising out of any:

(1)    Request, demand, or order (including consent decrees, consent orders, or administrative procedures) that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Hazardous Materials; or

7

(2)    Claim or Suit by or on behalf a governmental authority seeking recovery for testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Hazardous Materials.

This Hazardous Materials Exclusion applies to discharge, dispersal, seepage, migration, release, or escape, within a building or in the atmosphere, of Hazardous Materials at or from any premises regardless of whether or not owned, rented, occupied, or controlled by an Insured.

Clean up costs incurred by any Insured of any Hazardous Materials are not Property Damage under this Policy.

17.    Exclusion 20 provides that the policy does not cover, and Prime Insurance Syndicate will not be obligated to defend the insured against or pay Damages on the insured's behalf for Bodily Injury or Property Damage arising out of the willful violation of a penal statute or ordinance.

18.    Exclusion 21 provides that the policy does not cover, and Prime Insurance Syndicate will not be obligated to defend the insured against or pay Damages on the insured's behalf for Bodily Injury or Property Damage resulting from the management of property.

19.    Exclusion 22 provides that the policy does not cover, and Prime Insurance Syndicate will not be obligated to defend the insured against or pay Damages on the insured's behalf for Bodily Injury or Property Damage expected or intended from the standpoint of any Insured.

20.    Exclusion 23 provides that the policy does not cover, and Prime Insurance Syndicate will not be obligated to defend the insured against or pay

Damages on the insured's behalf for:

Property Damage to:

a.    Property you own, use, rent, or occupy regardless of when the Property Damage occurs or was discovered;

b.    Personal property in your care, custody, or control;

c.    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the Property Damage arises out of those operations;

d.    Premises you sell, give away, or abandon if the Property Damage arises out of any part of those premises regardless of when the Property Damage occurs or was discovered;

e.    Property loaned to you; or

f.    That particular part of any property that must be restored, repaired, or replaced because Your Work was improperly performed on it.

21.    Exclusion 30 provides that the policy does not cover, and Prime Insurance Syndicate will not be obligated to defend the insured against or pay Damages on the insured's behalf for:

Bodily Injury or Property Damage which directly or indirectly is the result of any act, error, or omission which was performed by the Insured prior to the Policy Period stated on the Declarations, regardless of the date the Bodily Injury or Property Damage was first discovered, first manifest, or reported.

9

22.    Exclusion 31 provides that the policy does not cover, and Prime

Insurance Syndicate will not be obligated to defend the insured against or pay

Damages on the insured's behalf for Bodily Injury or Property Damage arising out of

the rendering or failure to render professional services.

23.    Exclusion 32 provides that the policy does not cover, and Prime

Insurance Syndicate will not be obligated to defend the insured against or pay

Damages on the insured's behalf for:

> Any Claim for punitive or exemplary damages, fines, statutory
> penalties, or sanctions, whether imposed by law or otherwise, trebled
> or otherwise multiplied damages or any multiplied portion of a
> compensatory award, or the return or restitution of legal fees, costs or
> expenses.  Claims for or awards against any Insured for punitive or
> exemplary damages, fines, statutory penalties, or sanctions, whether
> imposed by law or otherwise, trebled or otherwise multiplied damages
> or any multiplied portion of a compensatory award are not covered by
> the Policy regardless of whether they are demanded or awarded based
> upon the conduct of an Insured or upon the conduct of others for
> whose conduct the Insured may be deemed to be vicariously liable.

24.    Exclusion 35 provides that the policy does not cover, and Prime

Insurance Syndicate will not be obligated to defend the insured against or pay

Damages on the insured's behalf for any Claim related to, caused by, or arising

from mold and fungi including, but not limited to:

> a.    Any sums that any Insured becomes legally obligated to pay as
> Damages because of Bodily Injury, Property Damage, Personal
> Injury, Advertising Injury, or Medical Payments directly or
> indirectly relating to the actual, potential, alleged, or threatened
> presence of mold, mildew, or fungi of any kind whatsoever, or
> any materials containing them at anytime; or
>
> b.    Any loss, cost, or expense to:

(1)    Any Insured or any other person or organization, that they may incur in testing for, monitoring, removing, treating, or in any way responding to the actual, potential, alleged, or threatened presence of mold, mildew, or fungi of any kind whatsoever, or any materials containing them, whether as a result of a request, demand, statutory, or regulatory requirement or otherwise; or

(2)    Any Insured or any other person or organization, that they may incur in connection with any Claim or Suit on behalf of any governmental authority or any person or organization relating to the actual, potential, alleged, or threatened presence of mold, mildew, or fungi of any kind whatsoever, or any materials containing them.

The Company neither assumes nor has any duty or obligation to defend any Insured with respect to any Claim or Suit seeking damages related to or resulting from mold, mildew or fungi.

25.    Section V of the Policy - Conditions, provides in pertinent part:

A.    Notice of Accident, Potential Claim, Claim, or Suit

1.    As an express condition precedent to coverage under this Policy, you must give us immediate written notice, as soon as possible and in no event later than 72 hours, of any incident, event, occurrence, loss, or Accident which might give rise to a Claim covered by this Policy. Written notice must be given to: Claims Direct Access, P.O. Box 4439, Sandy, Utah 84091-4439, U.S.A. Phone: (877) 585-2849 or (801) 304-5530; Fax: (877) 452-6909 or (801) 304-5536, and include:

a.    How, when, and where the incident, event, occurrence, loss, or Accident took place;

b.    The names and addresses of any injured persons and witnesses; and

c.    The nature and location of any injury or damage arising out of the Accident.

2.    You and any other involved Insured must:

11

a.  Immediately or at the earliest practicable moment, and in no event later than 10 days after receipt by you, send us copies of any demands, notices, summonses, or legal papers received in connection with any Claim or Suit and act in all diligence and prudence to resolve the Claim or Suit; provided, however, that no settlement in excess of any applicable SIR will be agreed to by the Insured without the Insurer's express written consent;

b.  Authorize us to obtain records and other information;

c.  Cooperate with us in the investigation, settlement, or defense of the Claim or Suit - the Insurer may require that the Insured submit to examination or questioning, attend hearings, depositions, and trials - additionally, in the course of investigation or defense, the Insurer may require written and/or sworn statements concerning the Claim; and

d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured, or which provides similar benefits to the Insured, because of injury or damage to which this Policy may also apply.

3.  No Insured will, except at his own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our prior consent in excess of any applicable SIR without prior written consent of the Insurer.

26.  The policy provides the following under Section E. Insured's

Representations and Warranties:

By accepting this Policy, you represent, warrant, and agree that:

*   *   *   *   *

3.  This Policy is a 'manuscript policy,' which means it does not follow any 'standard' insurance policy form and represents a

12

negotiated agreement between you and the Insurer, and you had the opportunity to seek the advice of legal counsel with regard to the negotiations for and the execution and performance of the Policy; and

4. Any insurance broker or agent involved in obtaining the Policy is represents you and not the Insurer, and the broker or agent is not authorized to bind coverage on behalf of the Insurer, and you do not assume the broker or agent has any implied or apparent authority to bind the Insurer; and

5. You are subject to all Policy provisions, terms, and conditions.

27. The policy contains a definition section which defines certain terms used throughout the policy. "Accident" means an incident, event, or circumstances which is unexpected and unintended from the standpoint of any Insured.

28. "Bodily Injury" means physical injury to a person's body, including death, but shall exclude:

1. Sickness or disease sustained by any person or death resulting there from; and

2. Mental or emotional distress, mental anguish, humiliation, embarrassment, mental anxiety, or other emotional, psychological or mental injury, or any physical manifestation thereof.

29. "Claim(s)" means any demand for Damages, including a written demand, a civil action, Suit, or institution of arbitration proceeding.

30. "Damages" means a compensatory sum, monetary judgment, award, or settlement an Insured is or may reasonably become legally obligated to pay as the result of an Accident, but does not include fines or statutory penalties,

13

sanctions, whether imposed by law or otherwise, punitive, exemplary, treble damages, or any multiplied portion of a compensatory award, nor the return or restitution of legal fees, costs, and expenses.

31.    "Hazardous Materials" is defined as any nuclear, radioactive, toxic, or explosive material, substance, or waste, and any by-products thereof, and the explosive, toxic, and dangerous properties of such material, substance, or waste and any by-products thereof.

32.    "Personal Injury" is defined as injury, other than Bodily Injury, arising out of one or more of the following offenses:

    1.    False arrest, detention, or imprisonment;

    2.    Malicious prosecution, discrimination, or civil rights violations, wrongful or retaliatory discharge;

    3.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or service personnel;

    4.    Oral or written publication of material that slanders or libels a person's or organization's goods, products, or services, or

    5.    Oral or written material that violates a person's right of privacy.

33.    "Policy Period" is defined as the period of time beginning on the "Effective Date," as stated on the Declarations, and ending on the earlier of the initial "Expiration Date," as stated on the Declarations, and any effective cancellation date pursuant to the terms of the Policy regardless of any renewal. Any renewal starts a new effective cancellation date of the renewal term from the

14

"Effective Date" of such renewal and ending on the earlier of any effective cancellation date of the renewal pursuant to the terms of the renewed Policy and the "Expiration Date" set forth on the renewal documents.

34.    "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, Hazardous Materials or any other waste, including materials to be recycled, reconditioned, or reclaimed.

35.    "Property Damage" means:

1.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.    Loss of use of tangible property that is not physically damaged. All such loss shall be deemed to occur at the time of the Accident that caused it.

36.    "Retroactive Date" means any date expressly identified on the Declarations as the Retroactive Date.  An expressly identified Retroactive Date shall be considered as the Effective Date for determining the Policy Period.  If no Retroactive Date is expressly identified on the Declarations, no coverage is provided for any period of time before the Effective Date.

37.    Section X - Governing Law, provides:

This Agreement is entered into in the State of Utah and the Agreement, and any rights, remedies, or obligations provided for in this Agreement, shall be construed and enforced in accordance with the laws of Utah.

15

38.    Section XI - Forum Selection And Consent To Jurisdiction provides:

The Insured represents that they have purposefully directed their actions to procure the insurance services of the Insurer contained in this Policy and has and/or will make continuous and systematic requests for the Insurer's services on their behalf, and acknowledges that the Insurer's principal place of business is in Utah. The Insured acknowledges that by entering into this Agreement the insured is deemed to be transacting business within the State of Utah, and the Insured consents to the jurisdiction of the courts of the State of Utah to hear and decide claims or disputes arising between the parties related to coverage issues and any payments due the Insured under the Policy.

39.    On July 10, 1007, after the expiration of The Prime Insurance Syndicate, Inc.'s claims made policy of insurance, Bernie and Katie Keys filed suit against Level Acres Mobile Home Estates in the Circuit Court of Barbour County, Alabama, Eufaula Division. (A true and correct copy of the complaint is attached hereto as Ex. 1).

40.    Plaintiffs Bernie Keys and Katie Keys allege that they owned a mobile home which was located in a lot owned and maintained by the Defendant, and that during the time they rented the lot, they noticed water and raw sewage running onto their lot. The Keys allege their trailer became infested with mold, which included the air ducts, carpet, floors and walls as well as the outside of the trailer. In April of 2006, the Keys allege they began to suffer health problems as a result of the mold, including pneumonia, bronchitis, and other respiratory problems, and were forced to move out of their home and into an apartment to avoid further complications from the sewage and mold infestation. Ex. 1.

41.    Paragraph 11 of the underlying complaint alleges Level Acres Mobile

16

Home Estates was aware or should have been aware of the defective condition of the sewer system, and failed to disclose the condition at the time the lot was leased.  The Keys claim Level Acres Mobile Home Estates failed to correct the problem even after becoming aware of the mold infestation in their home.  Ex. 1.

42.    The Keys contend they have suffered the following injuries and damages:

> Plaintiff, Bernie Keys suffered personal injuries as a result of said defective condition including pneumonia and bronchitis as a direct result of the mold infestation; he experienced great physical pain and mental anguish and will continue to experience same in the future; he was caused to seek medical treatment in and about an effort to heal his aforesaid injuries; he was caused to incur great expenses for medical and drug bills as a result of treatments for his aforesaid injuries and will in the future be caused to undergo medical treatment and incur medical expenses as a result of said injuries; he was rendered less able to tend to his normal duties, activities, and pursuits; he was caused to suffer emotional distress; Plaintiff Bernie Keys has also incurred property damage, and severe economic loss.

> Plaintiff Katie Keys suffered personal injuries as a result of said defective condition including respiratory problems as a direct result of the mold infestation; she experienced great physical pain and mental anguish and will continue to experience same in the future; she was caused to seek medical treatment in and about an effort to heal her aforesaid injuries; she was caused to incur great expenses for medical and drug bills as a result of treatments for her aforesaid injuries and will in the future be caused to undergo medical treatment and incur medical expenses as a result of said injuries; she was rendered less able to tend to her normal duties, activities, and pursuits; he was caused to suffer emotional distress; Plaintiff Katie Keys has also incurred property damage, and severe economic loss.

Ex. 1.

43.    Count One alleges Level Acres Mobile Home Estate's negligence is continuing in nature as it has refused to repair the problem and has allowed raw

17

sewage to continue to enter onto the Keys' property. Count Two alleges wantonness. Count Three alleges it was the duty of Level Acres Mobile Home Estates to keep the premises in a safe condition for the protection of the Keys and other persons who were lawfully on the premises and using the premises. The Keys contend Level Acres Mobile Home Estates negligently maintained or failed to maintain the premises in a safe condition, and the Keys were injured by a hidden danger while on the premises. The Keys further allege Level Acres Mobile Home Estates failed to warn them of the presence of the hidden danger, and/or negligently failed to maintain, repair or provide said premises in a safe condition. Count Four alleges nuisance. Count Five alleges trespass. Ex. 1.

44.    Pursuant to the terms and provisions of The Prime Insurance Syndicate, Inc.'s policy of insurance, there is no coverage for the entity identified as "Level Acres Mobile Home Estates" for the claims alleged in the underlying litigation.

### III. CAUSES OF ACTION.

45.    The Prime Insurance Syndicate, Inc. contends there is an actual controversy as to whether it has a duty to defend and/or indemnify the entity identified as "Level Acres Mobile Home Estates" with respect to the claims alleged in the underlying lawsuit.

46.    The Prime Insurance Syndicate, Inc. seeks a declaration from this Court that pursuant to the terms and provisions of the insurance policy, it has no duty to defend and/or indemnify the entity identified as "Level Acres Mobile Home

Estates" in the underlying lawsuit.

47.    The Prime Insurance Syndicate, Inc. additionally seeks a declaration from this Court that Bernie Keys and Katie Keys, the plaintiffs in the underlying litigation, be bound by this Court's decision regarding the relief sought against the other Defendants, and with respect to whether The Prime Insurance Syndicate, Inc. has any policy obligations with respect to the entity identified as "Level Acres Mobile Home Estates" in the underlying lawsuit.

## IV.  PRAYER FOR RELIEF.

48.    Plaintiff requests that this Court take jurisdiction over this matter and to further enter a declaration as to the respective rights and obligations of the parties relative to the underlying lawsuit.

49.    Plaintiff The Prime Insurance Syndicate, Inc. seeks other and further relief as may be deemed appropriate and possible under the circumstances.

_Dorothy a Powell_

DOROTHY A. POWELL

**OF COUNSEL:**

PARSONS, LEE & JULIANO, P.C.
Post Office Box 530630
Birmingham, AL  35253-0630
(205) 326-6600

20

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Claude J. Zito d/b/a Level Acres Mobile Home Estates
5 Bridgeview Drive
Rome, Georgia 30161

Level Acres Mobile Home Estates
1253 North Eufaula Avenue
Eufaula, AL 36027

EPA, LLLP d/b/a Level Acres Mobile Home Estates
1253 North Eufaula Avenue
Eufaula, AL 36027

Bernie Keys
c/o Mr. Richard F. Horsley
1 Metroplex Drive, Suite 280
Birmingham, AL 35209

Katie Keys
c/o Mr. Richard F. Horsley
1 Metroplex Drive, Suite 280
Birmingham, AL 35209

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA
EUFAULA DIVISION

BERNIE KEYS, an individual,    )
KATIE KEYS, an individual,    )
                              )
        Plaintiff,            )
                              )
v.                            )        Civil Action No.: CV- 07-49
                              )
LEVEL ACRES MOBILE HOME       )
ESTATES, a corporation, business, or )
legal entity; Defendants A, B, and C, )
those businesses, firms or corporations )
doing business as Level Acres Mobile )
Home Estates; Defendants D, E, and F, )
those persons, businesses, firms or )
corporations whose actions constitute )
negligence; Defendants G, H, and I, )
those persons, businesses, firms or )
corporations whose actions )
constitute wantonness; Defendants )
J, K, and L, those persons, businesses, )
firms or corporations who are liable )
to the plaintiffs under the theory of )
premises liability; Defendants M, N, and )
O, those persons, businesses, firms or )
corporations whose actions constitute )
nuisance; Defendants P, Q, and R, )
those persons, businesses, firms or )
corporations whose actions constitute )
trespass;all of whose names and )
legal identities are otherwise )
unknown to the Plaintiffs )
at this time, but will be added by )
amendment when ascertained, )
                              )
        Defendants.           )

**FILED**
JUL 10 2007
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

## COMPLAINT

### Parties and Venue

1.    Plaintiff Bernie Keys is an adult resident of Eufaula, Barbour County, Alabama.

EXHIBIT 1

2.    Plaintiff Katie Keys is an adult resident of Eufaula, Barbour County, Alabama.

3.    The Defendant, Level Acres Mobile Home Estates, is a corporation, business, or

legal entity doing business in Eufaula, Barbour County, Alabama

4.    This controversy relates to an incident occurring in Eufaula, Barbour County,

Alabama.

5.    Venue is proper in Barbour County, Alabama, Eufaula division.

### Factual Allegations

6.    The Plaintiffs, Bernie and Katie Keys, were tenants of the defendant's mobile

home park. In particular, the plaintiffs lived in a mobile home they personally

owned which was located on a lot owned and maintained by the defendant,

located at 1255 N. Eufaula Ave., Lot 15.

7.    The Plaintiffs had previously entered into a landlord/tenant relationship with the

defendant, in which it was agreed the Plaintiffs would pay rent in return for the

use of the lot.

8.    During the period of time the Plaintiffs' mobile home has been on defendant's lot,

Plaintiff Bernie Keys began noticing water and raw sewage running onto his lot

and under his mobile home.

9.    As a result of the water and raw sewage running onto their lot, the Plaintiffs'

trailer became infested with mold – including the air ducts, carpet, floors and

walls. The outside of the house also began showing signs of mold.

10.    In or about April 2006, Plaintiffs both began suffering from health problems as a

result of the mold, including pneumonia, bronchitis, and other respiratory

problems. Furthermore, the Plaintiffs were forced to move out of their mobile

home and into an apartment in order to avoid any further complications from the

sewage and mold infestation.

11.    The Defendant was aware, or should have been aware, of the defective condition

of the sewer system, and failed to disclose such dangerous condition at the time of

leasing the lot.

12.    Thereafter, the Defendant failed to do anything to correct the problem, even after

they became aware of the mold infestation in the plaintiffs' home.

13.    Not two years has passed since the last incident involving sewage seeping onto the

plaintiff's property occurred.

14.    As a proximate consequence of said defective condition, the Plaintiffs suffered the

following injuries and damages:

Plaintiff, Bernie Keys suffered personal injuries as a result of said defective
condition including pneumonia and bronchitis as a direct result of the mold
infestation; he experienced great physical pain and mental anguish and will
continue to experience same in the future; he was caused to seek medical
treatment in and about an effort to heal his aforesaid injuries; he was caused to
incur great expenses for medical and drug bills as a result of treatments for his
aforesaid injuries and will in the future be caused to undergo medical treatment
and incur medical expenses as a result of said injuries; he was rendered less able
to tend to his normal duties, activities, and pursuits; he was caused to suffer
emotional distress; Plaintiff Bernie Keys has also incurred property damage, and
severe economic loss.

Plaintiff, Katie Keys, suffered personal injuries as a result of said defective
condition including respiratory problems as a direct result of the
mold infestation; she experienced great physical pain and mental anguish and will
continue to experience same in the future; she was caused to seek medical
treatment in and about an effort to heal her aforesaid injuries; she was caused to
incur great expenses for medical and drug bills as a result of treatments for his
aforesaid injuries and will in the future be caused to undergo medical treatment
and incur medical expenses as a result of said injuries; he was rendered less able
to tend to her normal duties, activities, and pursuits; Plaintiff Katie Keys has also
incurred property damage, and severe economic loss.

## COUNT ONE / NEGLIGENCE

15.    The Plaintiffs adopt and re-allege all previous counts and paragraphs and further aver:

16.    The named defendant and fictitious defendants D, E, and F are guilty of negligence that proximately caused those damages and injuries set forth above.

17.    The negligence of these defendants is continuing in nature as they have refused to repair the problem and have allowed raw sewage to continue to enter onto the plaintiff's property.

18.    As a proximate cause, the Plaintiffs suffered the damages previously described.

WHEREFORE, the Plaintiffs request judgment in their favor in compensatory damages, plus interest and costs of court.

## COUNT TWO / WANTONNESS

19.    The Plaintiffs adopt and re-allege all previous counts and paragraphs and further aver:

20.    The named defendant and fictitious defendants G, H, and I are guilty of wantonness inasmuch as they consciously and deliberately disregarded the rights and safety of the Plaintiffs, or in that they acted with reckless disregard of their rights and safety, which such conduct proximately caused the damages and injuries set forth above.

21.    The wantonness of these defendants is continuing in nature as they have refused to repair the problem and have allowed raw sewage to continue to enter onto the plaintiffs' property.

22.    As a proximate cause, the Plaintiffs suffered the damages previously described.

WHEREFORE, the Plaintiffs request judgment in their favor in compensatory and

punitive damages, plus interest and costs of court.

## COUNT THREE / PREMISES LIABILITY

23.    The Plaintiffs adopt and re-allege all previous counts and paragraphs and further

aver:

24.    At all times material to the Complaint herein, the Plaintiffs aver that it was the

duty of the named defendant and fictitious defendants J, K, and L to keep and

maintain its premises in a safe condition for the protection of the Plaintiffs and

other persons who were lawfully upon said premises and using said premises.

25.    The Plaintiffs aver that the defendant and fictitious defendants J, K, and L,

negligently maintained or failed to maintain its premises in a safe condition, and

as a result thereof, the Plaintiffs were injured and damaged by a hidden danger, as

set forth above, while on the premises of the Defendant. The Plaintiffs further

aver that the defendants failed to adequately warn the Plaintiffs of the presence of

said hidden danger and/or negligently failed to maintain, repair, or provide said

premises in a safe condition on the occasion and date complained of in paragraph

10 herein.

26.    The Plaintiffs further aver that they were injured as a direct result of the

defendants' negligence and the condition of the defendants' premises and that said

conditions or defects were known to the defendants or should have been known to

the defendants with the exercise of reasonable and/or due care by said defendants.

27.    As a proximate cause, the Plaintiffs suffered the damages previously described.

WHEREFORE, the Plaintiffs request judgment in their favor in compensatory and punitive damages, plus interest and costs of court.

## COUNT FOUR / NUISANCE

28.    The Plaintiffs adopt and re-allege all previous counts and paragraphs and further aver:

29.    The named defendant and fictitious defendants M, N, and O are liable for permitting a private nuisance to be created and maintained on the plaintiffs' property.

30.    As a proximate cause of said nuisance, the Plaintiffs suffered the damages previously described.

WHEREFORE, the Plaintiffs request judgment in their favor in compensatory and punitive damages, plus interest and costs of court.

## COUNT FOUR / TRESPASS

31.    The Plaintiffs adopt and re-allege all previous counts and paragraphs and further aver;

32.    The named defendant and fictitious defendants P, Q, and R are liable to the Plaintiffs' for trespass, in that they caused the sewage to enter onto the plaintiffs' property and/or failed to repair the problem once they were made aware of it.

33.    As a proximate cause, the Plaintiffs suffered the damages previously described.

WHEREFORE, the Plaintiffs request judgment in their favor in compensatory and punitive damages, plus interest and costs of court.

Plaintiffs aver that the Defendants, both named and fictitious, are guilty of committing the

above-referenced acts or omissions and each Count of this Complaint is intended to apply to each

Defendant to the extent applicable.  Plaintiffs aver that the identity of the fictitious Defendants is

unknown to the Plaintiffs at the time of filing this Complaint.  Plaintiffs will amend their

Complaint accordingly upon ascertaining the identity of said Defendants.

WHEREFORE, the Plaintiffs request judgment in their favor in compensatory and

punitive damages, plus interest and costs of court.

Richard F. Horsley
Lindsey O. Hill
Attorneys for Plaintiffs

OF COUNSEL:

KING, HORSLEY & LYONS, LLC
1 Metroplex Drive, Ste. 280
Birmingham, Alabama 35209
(205) 871-1310

TRIAL COUNSEL:

Richard F. Horsley, Esq.
Lindsey O. Hill, Esq.

**Plaintiffs demand a trial by a struck jury in this cause.**

Of Counsel

DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602004343
Cashier ID: khaynes
Transaction Date: 03/17/2008
Payer Name: PARSONS LEE JULIANO PC
--------------------------------
CIVIL FILING FEE
 For: PARSONS LEE JULIANO PC
 Case/Party: D-ALM-2-08-CV-000185-001
 Amount:        $350.00
--------------------------------
CHECK
 Check/Money Order Num: 39161
 Amt Tendered:  $350.00
--------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

Prime Insurance v. Zito et al