## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| THE PRIME INSURANCE SYNDICATE, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CV- 2:08cv-00185-WKW |
| CLAUDE J. ZITO d/b/a LEVEL ACRES MOBILE HOME ESTATES, EPA, LLLP d/b/a LEVEL ACRES MOBILE HOME ESTATES, LEVEL ACRES MOBILE HOME ESTATES, BERNIE KEYS, and KATIE KEYS, | ) ) ) ) ) ) | |
| Defendants. | ) | |

### NOTICE OF FILING IN SUPPORT OF PLAINTIFF'S
### RESPONSE AND OBJECTION TO MOTION TO DISMISS

COMES NOW The Prime Insurance Syndicate, Inc., the Plaintiff in the above-styled cause, and submits the following evidence in support of Response and Objection to Motion to Dismiss filed by Claude J. Zito d/b/a Level Acres Mobile Home Estates:

Exhibit 1:    A true and correct copy of The Prime Insurance Syndicate, Inc.'s claims made policy of insurance issued to Claude J. Zito d/b/a Level Acres Mobile Home Estates, Policy No.: CP0603191 for a policy period of March 3, 2006 to March 3, 2007, with a retroactive date as March 3, 2006;

Exhibit 2:    Declarations page of American Empire Surplus Lines policy of insurance issued to EPA, LLLP d/b/a Level Acres Mobile Home Estates, Policy No.: 7CG23139 for a policy period of March 3, 2007 to March 3, 2008, with attached Schedule of Forms and Endorsements, and Commercial General Liability Schedule; and

Exhibit 3:    Correspondence to American Empire Surplus Lines dated March 27, 2008.


/s/ Dorothy A. Powell
DOROTHY A. POWELL


**OF COUNSEL:**

PARSONS, LEE & JULIANO, P.C.
2801 Highway 280 South
300 Protective Center
Post Office Box 530630 (35253)
Birmingham, AL 35223-2480
(205) 326-6600
dpowell@pljpc.com

### CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of May, 2008, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Mr. Clint Wilson and Mr. Richard F. Horsley.


/s/ Dorothy A. Powell
OF COUNSEL

EXHIBIT 1

# INEX

One South Wacker Drive, Suite 2720 – Chicago, Illinois 60606 – 312-372-4639
See Below for the Risk-Bearing Syndicate(s)

## Declarations

This Declarations Page is issued in conjunction with and forms a part of Policy Number:

Policy No.  CP0603191
IIE#  DCM259314

Item 1.  Name of Insured and Address:

Claude J. Zito
D.B.A. Level Acres Mobile Homes Estate

Physical Address                    Mailing Address
5 Bridgeview Drive                   5 Bridgeview Dr.
Rome, GA 30161                       Rome, GA 30161

Customer Number:        C06-102748

Item 2.  Policy Period:        From   03/03/2006   to   03/03/2007
                               (12:01 AM- Standard Time at the Address of the Insured)

Retroactive Date:       03/03/2006

Item 3.  Description of coverage afforded hereunder:        Commercial Package -- Broad

Item 4.  Limits of Liability:

Property:

| | | | | | |
|---|---|---|---|---|---|
| Building Coverage | Form:  Broad | Co Ins Req: 80 % | ACV | $600,000 |
| Business Income | Form:  Broad | Co Ins Req: 33 % | ACV | $175,000 |

| Unit No. | Address | | |
|---|---|---|---|
| 1 | Units 1 through 55 1253 N. Eufaula Ave Eufaula, AL 36027 | Value: | $445,000 |
| 1 | Units 1 through 55 1253 N. Eufaula Ave Eufaula, AL 36027 | Value: | $175,000 |
| 2 | Office & Warehouse 1253 N. Eufaula Ave Eufaula, AL 36027 | Value: | $155,000 |

Commercial Liability:
$250,000 Per Person              Products/Completed Operations:
$1,000,000 Per Accident          ☑ Excluded

Property/Physical Damage Deductible: ▓▓▓▓  Liability SIR: ▓▓▓▓  Policy Liability Aggregate:  $1,000,000

Item 5.  Premium                        ▓▓▓▓▓
         Inspection/Policy Fees         ▓▓▓▓   Brokerage Fee: ▓▓▓▓▓
         **TOTAL**                      ▓▓▓▓▓

Item 6.  Premium        ▓▓▓▓▓▓▓▓▓

Item 7.  Endorsements and forms attached to this Policy:

PAP-99-01, PAP-99-02, PCL-00-01, PCL-99-06, PCP-00-01, PCP-99-06, PCP-99-01, PAP-99-07, Application

Item 8.  Underwriting Syndicate:        The Prime Insurance Syndicate, Inc.        INEX #029
Item 9.  Exchange Broker:               IEBS CHI                                  INEX # 327-B

*Dawn L. Leonaurd*
Authorized Representative

INSURANCE COVERAGE HEREUNDER IS PROVIDED TO THE NAMED INSURED OR REINSURED THROUGH THE FACILITIES OF INEX (FORMERLY KNOWN AS THE ILLINOIS INSURANCE EXCHANGE) AND IS ISSUED IN ACCORDANCE WITH ARTICLE V-1/2 OF THE ILLINOIS INSURANCE CODE AND THE INEX REGULATIONS. COVERAGE IS PROVIDED SOLELY BY THE UNDERWRITING SYNDICATE(S) LISTED HEREIN. INEX, ITSELF, IS NOT AN INSURER AND, ACCORDINGLY, IS NOT A PARTY TO THE CONTRACT AND HAS NO LIABILITY HEREUNDER. EACH UNDERWRITING SYNDICATE LISTED ACCEPTS INDIVIDUAL AND SEVERAL LIABILITY BUT HAS NO JOINT LIABILITY.

"THIS INSURANCE POLICY IS BEING ISSUED BY AN INSURER THAT MAY NOT BE LICENSED BY THE STATE INSURANCE DEPARTMENT IN THIS STATE AND MAY NOT BE SUBJECT TO THIS STATE'S SUPERVISION AND MAY NOT BE PROTECTED IN THE EVENT OF THE INSOLVENCY OF THE INSURER BY THIS STATE'S GUARANTY OR SECURITY FUND. THIS POLICY ISSUED MAY NOT BE SUBJECT TO ANY OR ALL OF THE REGULATIONS OF THIS STATE'S INSURANCE DEPARTMENT PERTAINING TO POLICY FORM."

Issue Office: The Prime Insurance Syndicate, Inc.   303 W Madison St., Suite 2075, Chicago, IL 60606

MAY 1 1 2006

IEBS UDA-F-006 27JUN2005

Prime Insurance v. Zito, et al.
00001

## LIABILITY COVERAGE PART ENDORSEMENT

### PCL-99-06

**This Endorsement changes the terms and conditions of the Policy issued. Please read it carefully!**

A.  Maximum Aggregate Limit of Liability: The maximum amount the Insurer will be obligated to pay in entirety for an otherwise covered Claim or Claims during the Policy Period, including payment for Claim Expenses, Damages, or any other sums due under this Policy is as follows:

    $1,000,000  Aggregate Limit of Liability payable under the Policy (subject to the Sub-limits listed below)

B.  Sub-limits: Sub-limits are a limited portion of the total Maximum Aggregate Limit of Liability under the Policy identified for a specific Accident, person, or type or nature of loss covered under the Policy, and are subject to and deplete any per Accident Sub-limits and the Aggregate Limit of Liability provided by the Policy—Sub-limits are not in addition to the Aggregate Limit of Liability. Sub-limits and any Aggregate Limit of Liability are reduced by Claims Expenses. Each Sub-limit is also subject to any other applicable Sub-limit.

    1.  Commercial General Liability Per Accident

| | |
|---|---|
| $1,000,000 | Bodily Injury and Property Damage Liability |
| NONE | Products Liability |
| NONE | Completed Operations Liability |
| NONE | Independent Contractors Liability |
| NONE | Premises Liability |
| NONE | Liquor Liability (Per Person and Accident) |
| $250,000 | Per Person Limit |

    2.  Business Auto Liability (subject to any listed per person limit)

| | |
|---|---|
| NONE | Auto Liability Per Accident |
| NONE | Per Person Limit |

    3.  Other

| | |
|---|---|
| NONE | Bodily Injury and Property Damage Liability |

C.  Location Limitations: The Policy provides coverage for only those activities and operations otherwise covered under the Policy that take place at the locations listed below and for which a specific coverage charge has been paid.

| Classification and Description of Insured Hazards | Code No. | Basis of Coverage Charge |
|---|---|---|
| **See Attached Schedule.** | | |

Prime Insurance v. Zito, et al.
00002

# THE PRIME INSURANCE SYNDICATE, INC.

**8722 South Harrison Street**

**Sandy, UT 84070**

**Phone: (877) 585-2851 ext. 5020 Fax:(877) 585-2852**

## Policy Receipt Form and Coverage Conditions Summary

**TO THE PRODUCER AND INSURED: Coverage provided under the Policy referenced below is expressly conditioned upon you (the Insured) reviewing and properly executing and returning this Coverage Conditions and Policy Receipt Form ("Form") to us (the Insurer) within 10 days of receipt of the Policy. This Form requires you to make certain representations and warranties regarding the coverage provided by the Policy and to warrant continuing compliance with terms and conditions of coverage; however, this Form is NOT a complete summary of all terms and conditions of the Policy—the Policy should be read in its entirety by the Insured.**

**In the event this Form is not timely completed and returned, we reserve the right to cancel the Policy at any time upon notice to you. (Please verify the following information and correct it if necessary.)**

Insured:   Claude J. Zito                             Policy Number:   CP0603191 / DCM259314

Address:   5 Bridgeview Drive, Rome, GA 30161

Phone:   (334) 687-2123      Fax: 3346872123      E-Mail:

**Endorsements Delivered:**   PAP-99-01 Service of Suit, PAP-99-02 Territorial Restrictions, PCL-00-01 Commercial Liability Policy, PCL-99-06 Liability Coverage Part, PCP-00-01 Commercial Property Policy, PCP-99-06 Cause of Loss Broad Form, PCP-99-01 Commercial Property Schedule

**You understand, acknowledge, and agree as follows:**

1. You received a copy of the Policy and all Endorsements listed on the Declaration Certificate. (We sent the Policy to your broker or agent who is responsible for providing the Policy to you. If you have not received the Policy, please contact your broker or agent immediately and request it.)

2. The Policy is a "manuscript policy," which means it does not follow any standard insurance policy form.

3. Your completed Application has been received, reviewed, and relied upon by us in pricing coverage and issuing the Policy, and it, along with any other information provided by you, forms a part of the Policy.

4. The insurance broker or agent is acting as your agent and NOT our agent, and the broker or agent is not authorized to bind coverage on our behalf.

5. Coverage is limited to the activities and operations and at those locations listed, described, and defined on the Declaration Certificate and in the Policy.

6. You are required to give notice within 72 hours to us of any incident, occurrence, event, loss, or accident, which may lead to a claim.

7. Claim Expenses reduce the available Limits of Liability available under the Policy, and in the event of any Claim, the total amount of any premium charged shall be 100%.

8. Policy fees are non refundable regardless of whether the Policy is cancelled.

9. We have the right to collect additional premium equal to 25% of the total premium due for the Policy if you fail to comply with any premium audit request made by us at anytime.

10. The Policy provides for a Self-Insured Retention ("SIR") that must be paid by you in the event of a claim.

11. Both our delivery of the Policy to the broker or agent acting for you and your signature on this form separately constitute your express acceptance of the terms and conditions of the Policy.

12. The undersigned is authorized to execute this form and to bind the Insured identified on the Declaration Certificate.

**Acknowledged and Agreed:**

Dated:

_____

Signature ("Insured")

| For Office Use Only<br>Received and Reviewed by: | ReceiveDate: |
| --- | --- |
|  |  |

_____

(Print Name and Title)

MAY 1 1 2006

Prime Insurance v. Zito, et al.<br>00003

# COMMERCIAL PROPERTY SCHEDULE ENDORSEMENT
## PCP-99-01

Insured:    Claude J. Zito

Policy No.:  CP0603191            INEX No.:   DCM259314

**Description of Premises:**

| Premises No. | Building Location (Complete address/legal description) No. | |
|---|---|---|
| 1 | 1 | Units 1 through 55 1253 N. Eufaula Ave Eufaula, AL 36027 |
| 2 | 1 | Office & Warehouse 1253 N. Eufaula Ave Eufaula, AL 36027 |

**Subject of Insurance:**

Insurance coverage is only provide for the scheduled location and is subject to the conditions listed below as well as all other terms and conditions set within the Policy.

| Limit of Insurance | Limit | Form# | Coinsurance% |
|---|---|---|---|
| Location #1 – Building | $445,000 | Broad | 80% |
| Location #1 – Business Income | $175,000 | Broad | 33% |
| Location #2 – Building | $155,000 | Broad | 80% |

**Optional Coverage:**

Actual Cash Value      ☑ Yes    ☐ No

Premises Burglary      ☐ Yes    ☑ No

Business Interruption   ☑ Yes    ☐ No

**Deductible:**    ~~░░░░░~~ Per Claim

**Mortgage Holders:**

MORTGAGEE LOSS PAYEE/ADDITIONAL INSURED:

BMC Capital LP, ISAOA, ATIMA
P. O. Box 57068
Irvine, CA 92619-7068

Prime Insurance v. Zito, et al.
00004

# Attached Schedule

# Commercial Liability Location

**Policy No.:** <u>CP0603191</u>          **Insured Name:**     <u>Claude J. Zito</u>

**Classification and Description of Hazards Insured:**

| Loc No. | Code | Address |
|---------|------|---------|
| 1 | 46202 | 1253 N. Eufaula Ave, Eufaula, AL 36027 |
| 1 | 63010 | 1253 N. Eufaula Ave, Eufaula, AL 36027 |
| 1 | 49763 | 1253 N. Eufaula Ave, Eufaula, AL 36027 |

Prime Insurance v. Zito, et al.
00005

# COMMERCIAL PROPERTY INSURANCE POLICY

## PCP-00-01

THIS COMMERCIAL PROPERTY INSURANCE POLICY (the "Policy") is a manuscript policy, meaning it is a negotiated agreement entered into by and between the Insured and the Insurer, and as such it differs significantly from property policies offered by other insurance companies which, in most instances, are approved by state regulatory authorities. The terms of this Policy are contractual and not merely recitals, and the Policy shall be construed as a whole, including all paragraphs, sections, conditions, provisions, exclusions, and Endorsements. Additionally, this Policy has very strict claim reporting requirements, and all application(s), discovery form(s), warranty form(s), and other forms completed by the Insured to obtain coverage form a part of this Policy and constitute warranties of the Insured to the Insurer.

Generally coverage is provided hereby only for otherwise Covered Property (as more fully set forth in the Policy):

    (1) Which suffers direct Damage or Loss during the Policy Period, and

    (2) Which results from a Covered Cause of Loss occurring entirely during the Policy Period, and

    (3) For which written notice is given to the Insurer during the Policy Period.

In addition, coverage is strictly limited to those Buildings listed, described, and defined in the Declarations or in any Endorsement. Various other provisions of this Policy restrict and limit the coverage provided. Please read the entire Policy and all Endorsements carefully to determine your rights and duties and what is and is not covered.

Claim Expenses reduce the available Limit of Insurance stated in the Declarations. In the event of any Claim, the total amount of any Policy premium charged shall be 100% earned and not subject to short-rate or pro-rata adjustment.

Throughout the Policy and any Endorsements, the words "you," "your," and "Named Insured" refer to the Insured. The words "we," "us," "our," and the "Company" refer to the Insurer.

Capitalized terms have specific meaning throughout the Policy as defined in the Definitions Section below.

### SECTION I — COVERAGE

A. Subject to all other terms and conditions of the Policy, we pay only for Damage or Loss to Covered Property at any Building described in the Declarations, or any Endorsement, caused by or resulting from any Covered Cause of Loss if:

    1. Such loss occurs entirely during the Policy Period stated in the Declarations; and

    2. Such loss is reported to us in writing during the Policy Period.

    For purposes of a Loss involving repeated exposure to the same or similar harmful conditions, the date of such Loss is deemed to encompass the dates starting with the first exposure through the last exposure and such dates must all fall within the Policy Period to be covered hereunder. Damage or Loss arising prior to the coverage date of the Policy is not covered regardless of when Damage or Loss is first manifest or discovered.

B. Covered Causes of Loss include only those causes specifically identified on the attached "Causes of Loss Form" which will provide for "Basic," "Broad," or "Special" Causes of Loss depending upon the coverage quoted and indicated in the Declarations. This Policy is a named peril coverage policy only—meaning only those perils specifically listed as Covered Causes of Loss are covered.

Prime Insurance v. Zito, et al.
00006

C.  Covered Property, subject to any limitations, Limit of Insurance, and Deductibles, includes the following, but only if a specific Limit of Insurance is identified in the Declarations for the general type of property described:

1.  Building (if a specific Limit of Insurance is identified in the Declarations): Any Building described in the Declarations as being covered by this Policy, including:

    a.  Completed additions, fixtures, including outdoor fixtures, and permanently installed machinery and equipment;

    b.  Personal property owned by you used to maintain or service a covered building or structure including fire extinguishing equipment, outdoor furniture, floor coverings, and appliances utilized for ventilation, cooking, dishwashing, refrigeration, and laundry; and

    c.  If not covered by other insurance;

        (1)  Additions, including remodeling under construction, alterations, and/or repairs to the building or structure; and

        (2)  Materials, equipment, supplies, and temporary structures, on or within 100 feet of any covered building or structure identified in the Declarations, utilized for the additions, remodeling, alterations, and/or repairs to such building or structure.

2.  Business Personal Property (if a specific Limit of Insurance is identified in the Declarations): Any Business Personal Property located in or on any Building or in the open or in a vehicle within 100 feet of any Building, consisting only of:

    a.  Furniture and fixtures;

    b.  Machinery and equipment;

    c.  Stock;

    d.  All other personal property owned by you and used in your business;

    e.  Readily quantifiable labor, materials, or services furnished or arranged by you on or for the personal property of others;

    f.  Your use interest as tenant in improvements and betterments, specifically including fixtures, alterations, installations, or additions made a part of any Building you occupy but do not own, and that you acquired or made at your expense but cannot legally remove; and

    g.  Leased personal property for which you have a contractual responsibility to insure, unless otherwise insured as the personal property of others.

3.  Personal Property (if a specific Limit of Insurance is identified in the Declarations):  Personal property of others that is in your care, custody, or control, and which is located in or on the Premise in the open (or in a vehicle) within 100 feet of the Building.  However, our payment of Damage or Loss to personal property of others will only be for and paid to the account of the owner of the property and such amounts will not be due or paid to you.

D.  Real and personal property expressly not covered by this Policy include:

1.  Foundations of the Building, structure, machinery, or boiler if their foundations are below the lowest basement floor, or the surface of the ground, if there is no basement;

2.  Retaining walls that are not part of the Building;

3.  Land (including land on which the property is located), water, growing crops, or lawns;

Prime Insurance v. Zito, et al.
00007

4. Underground pipes, flues, or drains;

5. The cost of excavations, grading, backfilling, or filling;

6. Bridges, roadways, walks, patios, or other paved surfaces;

7. Bulkheads, pilings, piers, wharves, or docks;

8. Animals unless owned by others and boarded by you or if owned by you only as Stock while inside the Building;

9. The following property while outside of the Building:

   a. Hay, straw, grain, corn, or other crops; and

   b. Fences, radio or television antennas, (including satellite dishes), and their lead in wiring, masts or towers, signs (but only up to $1,000), trees, shrubs or plants (other than Stock of trees shrubs or plants);

10. Accounts, bills, currency, deeds, food stamps, lottery tickets, or other evidence of debt, money, notes, or securities;

11. Automobiles;

12. Contraband or property in the course of illegal transportation or trade;

13. Personal property while airborne or waterborne;

14. Property covered under any other policy, except for the excess of the amount due (whether you can collect on it or not) from any other insurance;

15. Vehicles or self-propelled machines including aircraft or watercraft that:

   a. Are licensed for use on public roads; or

   b. Are operated principally away from any Building, but this paragraph does not apply to:

      (1) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

      (2) Vehicles or self-propelled machines other than autos, you hold for sale; or

      (3) Rowboats or canoes out of water at the identified Building; and

16. Electronic data including information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

17. The cost to research, replace, or restore the information on valuable papers and records, including those which exist on electronic or magnetic media. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems.

Prime Insurance v. Zito, et al.
00008

E.  Subject to any limitations, Limit of Insurance and Deductibles, additional coverage is provided for the following, but only if a Limit of Insurance is specifically identified in the Declarations for the coverage described:

1.  Debris Removal: We will pay your expense to remove debris from the Building caused by or resulting from a Covered Cause of Loss that occurs during the Policy Period. Debris removal does not apply to costs to extract Pollutants from land or water; or remove, restore, or replace polluted land or water.

2.  Preservation of Property: If it becomes necessary to move covered property from the Premise to preserve it from Damage or Loss, we will pay for any direct Damage or Loss to that property while it is being moved or while temporarily stored at another location, but only if the Damage or Loss occurs within 30 days after the property is first moved.

3.  Fire Department Service Charge: When the fire department is called to save or protect any Building, we will pay up to $500 for your liability for fire department service charges that are either assumed by contract or agreement prior to Damage or Loss occurring or required by local ordinance. No Deductible applies to this service charge coverage.

Payments made for any of these additional coverages, if applicable, do not increase the applicable Limit of Insurance.

F.  All payments for Damage or Loss are subject to the Deductible shown in the Declarations. We will not pay for any Damage or Loss suffered in any event until the amount of Damage or Loss exceeds the Deductible. We will then pay only the amount of Damage or Loss in excess of the Deductible, up to any applicable Limit of Insurance Special Limit.

G.  This Policy provides no general liability or personal injury coverage of any kind.

## SECTION II — WHO IS THE INSURED?

A.  The Insured is the person and/or entity expressly designated in the Declarations as the Insured.

B.  The Insured may designate a Mortgagee or Trustee as a beneficiary under the Policy in which event we will have the following rights:

1.  We shall have the right to pay Damage or Loss to any Building directly to any mortgagee or trustee on shown in the Declarations or any Endorsement in their order of precedence, as interests may appear provided all premiums have been timely paid. Any such mortgagee or trustee has the right to receive Damage or Loss payment even if the mortgage holder has started foreclosure or similar actions on the building or structure. In the event we deny any Claim because of your acts or because you have failed to comply with the terms of the Policy, the mortgagee or trustee shall still have the right to receive Damage or Loss payment if the mortgagee:

    a.  Has paid and kept current any premium due under the Policy at our request if you have failed to do so;

    b.  Submits a signed, sworn statement of Damage or Loss within 60 days after receiving notice from us of your failure to pay any premium when due; and

    c.  Has notified us of any change in ownership, occupancy, or substantial change in risk known to the mortgagee or trustee.

Provided the mortgagee or trustee have complied with all terms of this Section and in the Policy, the Policy will then apply directly to the mortgagee.

2.  If we pay the mortgagee for any Damage or Loss and deny payment to you because of your acts or because you have failed to comply with the terms of this Policy:

Prime Insurance v. Zito, et al.
00009

a.  The mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

b.  The mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

At our option, we may pay to the mortgagee the whole principal on the mortgage, plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

3.  If we cancel this Policy, we will provide written notice to the mortgagee at least 10 days before the effective date of cancellation, if we cancel for non-payment of premium; or 30 days before the effective date of cancellation, if we cancel for any other reason.

4.  If we elect not to renew this Policy, we will provide written notice to the mortgagee at least 10 days before the Expiration Date of this Policy.

### SECTION III — LIMIT OF INSURANCE

A.  The Limit of Insurance shown in the Declarations as to the forms and types of coverage provided and the conditions set forth below fix the most we will pay for any Damage or Loss regardless of the number of Covered Causes of Loss, Claims made, or Buildings identified.

B.  This Policy is subject to any and all Deductibles and Limit of Insurance identified in this Policy, including any identified in the Declarations or on any included Endorsement. The Insured is required to pay or cover any applicable Deductible amount before any sum becomes due or is paid under this Policy.

C.  Any series of continuing events which constitute a Covered Cause of Loss that cause Damage or Loss to any Premise shall be considered one Covered Cause of Loss for which a single Limit of Insurance and a single Deductible applies. Any series of related events which constitute Covered Causes of Loss but which are not continuing in nature shall be considered separate Covered Causes of Loss for which the Limit of Insurance applies to each Covered Cause of Loss and Deductibles must be paid by the Insured for each such Covered Cause of Loss. The Insurer's obligation to cover Covered Causes of Loss is terminated in the event of any continuing, related, or single Covered Cause of Loss at such time as the Limit of Insurance is exhausted.

D.  All Claim settlement costs and Claim Expenses are included within the Limit of Insurance shown on the Policy Declaration Certificate and are not in addition to such Limit of Insurance. The Limit of Insurance apply to the total sum that the Insured, or the Insurer, become legally obligated to pay by reason of any Covered Cause of Loss.

E.  The following items affect our Limit of Insurance as outlined:

1.  A single Covered Cause of Loss, or the accumulation of more than one Covered Cause of Loss during the Policy Period, may cause the Limit of Insurance to be exhausted at which time the Insured will have no further benefits under the Policy;

2.  Upon the exhaustion of our Limit of Insurance, the Insured may request the Insurer to reinstate the original Limit of Insurance for the remainder of the Policy Period for an additional coverage charge as may be calculated and offered by the Insurer on the Policy issued; although, the Insurer has no obligation to accept the Insured's request; and

3.  The Insured understands and agrees that the Insurer has no obligation under the coverage provided by the Policy to notify the Insured of the possibility that the maximum coverage payable is or may be exhausted by any Covered Cause of Loss or combination of Covered Causes of Loss that occur or may occur during the Policy Period. The Insured, in his, her, or its sole discretion, must determine if additional coverage should be purchased, and the Insurer has no duty to make a determination or advise the Insured concerning additional coverage.

F.  The most we will pay for Damage or Loss to outdoor signs attached to any Building is $1,000 per sign resulting from any one Covered Cause of Loss.

G.  The Insured is a coinsurer of the risks covered under this Policy, and as such, in the event of any Damage or Loss including, but not limited to a total loss, any Damage or Loss amount will be reduced proportionately to the coinsurance requirement as set forth in the Declarations. The Insured has been offered the opportunity to purchase adequate insurance coverage to cover the actual value of any Covered Property and has either purchased coverage to meet the actual value or has determined to purchase less than full value coverage. Additionally, the following conditions apply to the coinsurance percentage shown in the Declarations:

1.  We will not pay the full amount of any loss if the replacement cost value of covered property at the time of loss times the coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

    Instead, we will determine the most we will pay using the following steps:

    a.  Multiply the replacement cost value of covered property at the time of loss by the coinsurance percentage;

    b.  Divide the limit of insurance of the property by the figure determined in step (a);

    c.  Before the application of any deductible, multiply the lesser of

        (1) The total amount of loss (on an Actual Cash Value basis), or

        (2) The limit of insurance of the property, by the figure determined in step (b); and

    d.  Subtract the deductible from the figure determined in step (c).

    We will pay the amount determined in step (d) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

    Example No. 1 (Underinsurance where the total amount of loss does not exceed Policy limits. Note, this is an example of one underinsurance scenario, other underinsurance scenarios may arise.)

    When:

    | | |
    |---|---|
    | The Replacement Cost Value of the property is | $250,000 |
    | The coinsurance percentage for it is | 80% |
    | The Limit of Insurance for it is | $100,000 |
    | The Deductible is | $250 |
    | The Actual Cash Value amount of loss is | $40,000 |

    Step (1):  $250,000 x 80% = $200,000
               (The minimum amount of insurance to meet your coinsurance requirements.)
    Step (2):  $100,000 ÷ $200,000 = 0.50
    Step (3):  $40,000 x 0.50 = $20,000
    Step (4):  $20,000 - $250 = $19,750

    Accordingly, we will pay no more than $19,750. The remaining $20,250 is not covered.

    Example No. 2 (Underinsurance where the total amount of loss exceeds Policy limits. Note, this is an example of another underinsurance scenario, other underinsurance scenarios may arise.)

    When:

    | | |
    |---|---|
    | The Replacement Cost Value of the property is | $250,000 |
    | The coinsurance percentage for it is | 80% |

| The Limit of Insurance for it is | $100,000 |
| The Deductible is | $250 |
| The Actual Cash Value amount of loss is | $150,000 |

Step (1):  $250,000 x 80% = $200,000
(The minimum amount of insurance to meet your coinsurance requirements.)
Step (2):  $100,000 ÷ $200,000 = 0.50
Step (3):  $100,000 x 0.50 = $50,000
Step (4):  $50,000 - $250 = $49,750

Accordingly, we will pay no more than $49,750.  The remaining $100,250 is not covered.

Example No. 3  (Adequate insurance)

When:

| The Replacement Cost Value of the property is | $250,000 |
| The coinsurance percentage for it is | 80% |
| The Limit of Insurance for it is | $200,000 |
| The Deductible is | $250 |
| The Actual Cash Value amount Loss is | $40,000 |

The minimum amount of insurance to meet your coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies.  We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

2.  If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

Example No. 4

When:

| The Replacement Cost Value of property is: | |
| Building at location No. 1 | $75,000 |
| Building at location No. 2 | $100,000 |
| Personal Property at location No. 2 | $75,000 |
| Total | $250,000 |
| The coinsurance percentage for it is | 90% |
| The Limit of Insurance for buildings and personal property at location Nos. 1 and 2 is | $180,000 |
| The Deductible is | $1,000 |
| The Actual Cash Value amount of loss is: | |
| Building at location No. 2 | $30,000 |
| Personal Property at location No. 2 | $20,000 |
| Total: | $50,000 |

Step (1):  $250,000 x 90% = $225,000
(The minimum amount of insurance to meet your coinsurance requirements and to avoid the penalty shown below.)
Step (2):  $180,000 ÷ $225,000 = .80
Step (3):  $50,000 x .80 = $40,000
Step (4):  $40,000 - $1,000 = $39,000

We will pay no more than $39,000.  The remaining $11,000 is not covered.

H.  Property Coverage Deductible

1.  We cover only that part of the loss in excess of the Deductible amount stated in the Declarations.

2.  If a Covered Cause of Loss occurs to property that is subject to a Special Limit and the Damage or Loss is also subject to a Deductible, we will pay the lesser of the amount of the Damage or Loss less the amount of the deductible, or the applicable Special Limit.

3.  In the event a Covered Cause of Loss arises by or from fire, the Deductible shall increase by two times the stated Deductible and such increased Deductible shall be applicable to all Claims, including total or constructive total losses.

4.  In any one Covered Cause of Loss of Damage or Loss, we will first reduce the amount of such Damage or Loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of the Damage or Loss is less than or equal to the Deductible, we will not pay for that Damage or Loss. If the adjusted amount of the Damage or Loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of Damage or Loss, and will pay the resulting amount or the Limit of Insurance, whichever is less. When the Covered Cause of Loss involves Damage or Loss to more than one item of Covered Property and separate Limit of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per Covered Cause of Loss.

Example No. 1: (This example assumes there is no coinsurance penalty.)

| | |
|---|---|
| Deductible per Claim | $      250 |
| Limit of Insurance – Building 1: | $ 60,000 |
| Limit of Insurance – Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for

| | | |
|---|---|---|
| Building 1 | Amount of Loss | $ 60,100 |
| Minus | Deductible | $      250 |
| Equals | Loss Payable | $ 59,850 |

The Deductible applies once per Covered Cause of Loss and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139, 850.

Example No. 2:      (This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

| | |
|---|---|
| Deductible per Claim | $      250 |
| Limit of Insurance – Building 1: | $  60,000 |
| Limit of Insurance – Building 2: | $  80,000 |
| Loss to Building 1: | $  70,000 |
| Loss to Building 2: | $  90,000 |

Total Amount of Loss Payable    $ 140,000.

## SECTION IV — CONDITIONS

A.  Coverage Conditions

1.  As an express condition precedent to coverage under this Policy, you must give us immediate written notice, as soon as possible and in no event later than 72 hours, of any incident, event, or Covered Cause of Loss which might give rise to Damage or Loss covered by this Policy. Written notice must be given to:

Prime Insurance v. Zito, et al.
00013

Claims Direct Access, P.O. Box 4439, Sandy, Utah 84091-4439, U.S.A.  Phone: (877) 585-2849 or (801) · 304-5530; Fax: (877) 452-6909 or (801) 304-5536, and include:

   a.   How, when, and where the Covered Cause of Loss took place;

   b.   The names and addresses of any witnesses; and

   c.   The nature of any actual or potential Damage or Loss arising out of the Covered Cause of Loss.

2.   You and any other involved Insured must:

   a.   Notify the police if a law may have been broken.

   b.   Authorize us to obtain records and other information;

   c.   Cooperate with us in the investigation of any Covered Cause of Loss including, but not limited to providing written and/or sworn statements concerning the Claim; and

   d.   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured, or which provides similar benefits to the Insured, because of Damage or Loss to which this Policy may also apply.

   e.   Protect the property from further damage. If repairs to the property are required, you must make reasonable and necessary repairs to protect the property, and keep an accurate record of repair expenses.

   f.   Prepare an inventory of damaged personal property showing the quantity, description, Actual Cash Value, and amount of Damage or Loss. Attach all photographs, ownership receipts, bills, receipts, and related documents that justify the figures in the inventory.

   g.   As often as we reasonably required permit us or our agents with access to the damaged property, and permit us to take samples as necessary to assist in investigating the claim; provide us with records and documents we request and permit us to make copies; and submit to examination under oath, while not in the presence of any other insured, and sign such examination transcript as being truthful.

   h.   Send to us within 10 days your signed, sworn statement of proof of Damage or Loss that sets forth to the best of your knowledge and belief:

      (1)   The time and cause of loss;

      (2)   The interest of the Insured and all others in property involved and all liens on the property;

      (3)   Other insurance that may cover the Damage or Loss;

      (4)   Specifications of damaged buildings and detailed repair estimates;

      (5)   The inventory of damaged personal property; and

      (6)   Receipts and records for additional living expenses incurred, which may be supplemented for additional costs incurred beyond the time period covered in the initial statement of proof of Damage or Loss.

   i.   In the event you have obtained coverage for debris removal, any associated expenses will be paid only if the Covered Cause of Loss was timely reported and such expenses are reported to us in a detailed line item written report within 180 days of the Covered Cause of Loss.

Prime Insurance v. Zito, et al.
00014

3.  If there is a disagreement on the value of the property or the amount of the Damage or Loss, either of us may make written demand for an appraisal of the value of the property or the amount of Damage or Loss. In this event, each party has the option to either:

    a.  Select an independent, competent, and impartial appraiser, or

    b.  Use as their appraiser, the adjuster or other party they have retained initially to adjust the Damage or Loss.

    The two appraisers will select an umpire. If they cannot agree on the selection of the umpire, either may request that a judge of a court having jurisdiction make the selection. The appraisers will state separately the value of the property or amount of Damage or Loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the value of the property or the amount of Damage or Loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser, bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we still retain our right to deny the claim.

4.  You may not abandon any property to us.

5.  This Policy is void in the event of fraud, misrepresentation, or concealment at any time by any Insured, or for or on behalf of any Insured, as it relates to this Policy in obtaining coverage, representing what is covered property or the value of any covered property or Damage or Loss, or in reporting any Damage or Loss claim.

B.  Other Insurance

    1.  If other valid and collectible insurance, whether primary, excess, or contingent or on any other basis, including any form of a Deductible, is available to an Insured for a Damage or Loss covered under this Policy, then:

        a.  This Coverage is excess over the other insurance, including any form of Deductible; and

        b.  We will have no duty to cover any Damage or Loss covered by any other insurer.

    2.  When both this Policy and other insurance, whether primary, excess, or contingent or on any other basis, including any form of deductible, apply to the Damage or Loss on the same basis, we will not be liable under this Policy for a greater proportion of the Damage or Loss than that stated in the applicable contribution provision below:

        a.  If all such other insurance provides for contribution by equal shares, we shall not be liable for a greater proportion of such Damage or Loss than that which would be payable if each Insurer or self-insured entity contributes an equal share until the share of each Insurer or self-insured entity equals the lowest applicable Limit of Insurance under any one policy or the full amount of the Damage or Loss is paid. With respect to any amount of the Damage or Loss not so paid, each remaining Insurer or self-insured entity will then contribute an equal share of the remaining amount of the Damage or Loss until each such Insurer has paid its limit in full or the full amount of the Damage or Loss is paid.

        b.  If all such other insurance does not provide for contribution by equal shares, the Insurer shall not be liable for a greater proportion of such Damage or Loss than the applicable Limit of Insurance under this Policy bears to the total applicable Limit of Insurance of all other valid and collectible insurance applicable to such Damage or Loss.

    3.  If this Policy and any other policy or coverage contract issued to you by us or any company affiliated with us apply to the same Covered Cause of Loss the Limit of Insurance under all of the policies and coverage contracts shall not exceed the highest applicable Limit of Insurance under any one policy or coverage contract. This condition does not apply to any policy or coverage contract issued by us, or an affiliated company, specifically to apply as excess insurance over this Policy.

C. Vacancy

1. When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

2. When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

   a. Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

   b. Used by the building owner to conduct customary operations.

   Buildings under construction or renovation are not considered vacant.

3. Under the terms of this Policy, at any time any Building is Vacant, we will not pay for any Damage or Loss caused by any of the following even if caused by a Covered Causes of Loss:

   a. Vandalism;

   b. Sprinkler leakage, unless you have protected the system against freezing;

   c. Building glass breakage;

   d. Water damage; or

   e. Theft or attempted theft.

4. With respect to any Covered Causes of Loss other than those listed in subparagraphs E(1)(a) through E(1)(d) above, we will reduce the amount we would otherwise be obligated to pay under the terms of the Policy for any Damage or Loss by 15%.

D. Recovered Property

If either you or we recover any property after Damage or Loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

E. Loss Payment

1. In the event of Damage or Loss covered by this Policy, at our option, we will either:

   a. Pay the value of lost or damaged property;

   b. Pay the cost of repairing, rebuilding, or replacing the lost or damaged property subject to subparagraph b. below.

   c. Take all or any part of the property at an agreed or appraised value; or

   d. Repair, rebuild or replace the property with other property of like kind and quality.

2. The cost to repair, rebuild, or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use, or repair of any property. We will give notice of our payment intentions within 30 days after we receive the sworn proof of Damage or Loss. We will not pay you more than your financial interest in the Covered Property, and we may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your

Prime Insurance v. Zito, et al.
00016

Claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

3. We will pay for covered Damage or Loss within 30 days after we receive the sworn proof of Damage or Loss, if you have complied with all of the terms of the Policy, and we have reached agreement with you on the amount of Damage or Loss or the appraisal award has been made.

4. We will determine and pay the value of any Damage or Loss at Actual Cash Value as of the time of Damage or Loss.

F.  Valuation

We will determine the value of Covered Property in the event of Damage or Loss as follows:

1. At actual cash value as of the time of Damage or Loss, except as provided in b., c., d. and e. below.

2. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

   The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

   a. Awnings or floor coverings;

   b. Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

   c. Outdoor equipment or furniture.

3. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

4. Glass at the cost of replacement with safety glazing material if required by law.

5. Tenant's Improvements and Betterments at:

   a. Actual cash value of the lost or damaged property if you make repairs promptly.

   b. A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

      (1) Multiply the original cost by the number of days from the Damage or Loss to the expiration of the lease; and

      (2) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

         If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

   c. Nothing if others pay for repairs or replacement.

G.  Optional Coverages

If shown by reference as applicable in the Declaration Certificate, the following Optional Coverages apply separately to each item.

Prime Insurance v. Zito, et al.
00017

1. If a specific value is identified for each Premise listed in the Declarations:

    a. The coinsurance condition does not apply to such Building; however, we will pay no more for Damage or Loss to that Building than the proportion that the Limit of Insurance for such Building bears to the Agreed Value shown for it in the Declaration Certificate.

    b. The terms of any Optional Coverage applies only to Damage or Loss that occurs:

        (1) On or after the effective date of the Optional Coverage; and

        (2) Before the agreed value expiration date shown in the Declaration Certificate or the Policy expiration date, whichever occurs first.

2. If RC (without deduction for depreciation) replaces ACV in the Declarations, this Optional Coverage does not apply to:

    a. Personal property of others;

    b. Contents of a residence;

    c. Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

    d. Stock, unless the stock option is shown in the Declaration Certificate.

    Under RC Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

3. If RC (without deduction for depreciation) replaces ACV in the Declarations:

    a. This Optional Coverage allow you to make a claim for Damage or Loss covered by this insurance on an ACV basis instead of on a RC basis. In the event you elect to have Damage or Loss settled on an ACV basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the Covered Cause of Loss occurs.

    b. We will not pay Damage or Loss on an RC basis:

        (1) Until the lost or damaged property is actually repaired or replaced; and

        (2) Unless the repairs or replacement are made as soon as reasonably possible after the Damage or Loss.

        With respect to tenants' improvements and betterments, the following also apply:

        (3) If the conditions in 4(1) and 4(2) above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Declarations or any Endorsement; and

        (4) We will not pay for Damage or Loss to tenants' improvements and betterments if others pay for repairs or replacement.

    c. We will not pay more for Damage or Loss on a RC basis than the least of (1), (2) or (3) below, subject to subsection d:

        (1) The Limit of Insurance applicable to the lost or damaged property;

        (2) The cost to replace the lost or damaged property with other property:

Prime Insurance v. Zito, et al.
00018

    (a) Of comparable material and quality; and

    (b) Used for the same purpose; or

  (3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt on different real property, the cost described in c (2) above is limited to the cost that would have been incurred if the building had been rebuilt on the original property.

  d.  The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

H.  Premium

  1.  We will compute the premium for this Policy in accordance with our rules and rates at the time coverage is issued or renewed on behalf of the Insured.

  2.  In the event of any Damage or Loss, the minimum, fully-earned premium for the Policy will be 100% of the total premium stated in the Declarations, and such minimum, fully-earned premium will replace any other minimum-earned premiums charged and will not be subject to short-rate or pro-rata adjustment.

  3.  In the event the Insured fails to tender the required Premium amount or Deductible and the Insurer incurs collection expenses, the Insurer shall be entitled to recover all costs of collection including, but not limited to reasonable attorneys' fees, costs, and expenses from the Insured.

I.  Insured's Representation

By accepting this Policy, you represent, warrant, and agree that:

  1.  The completed Application and any supplemental applications or other documentation provided to obtain this Policy do not contain any material inaccuracies, omissions, mistakes, misrepresentation, false statements or errors of fact, regardless of whether the information was provided by you or your broker or agent;

  2.  You understand the information provided in and with your Application for insurance has been relied upon by the Insurer in pricing coverage and issuing the Policy and the Application, along with any other information provided by you, forms a part of the Policy;

  3.  The Policy is a "manuscript policy," which means it does not follow any "standard" insurance policy form and represents a negotiated agreement between you and the Insurer, and you had the opportunity to seek the advice of legal counsel with regard to the negotiations for and the execution and performance of the Policy;

  4.  Any insurance broker or agent involved in obtaining the Policy is represents you and not the Insurer, and the broker or agent is not authorized to bind coverage on behalf of the Insurer, and you do not assume the broker or agent has any implied or apparent authority to bind the Insurer; and

  5.  You are subject to all the Policy provisions, terms, and conditions.

J.  Transfer of Rights of Recovery Against Others To Us

If an Insured has rights to recover all or a part of any payment for Damage or Loss, Damage or Loss, or Claim Expenses we have made under this Policy from any person or organization, those rights are hereby transferred to the Insurer. The Insured must do nothing after the Damage or Loss to impair these rights. At our request, the Insured will bring a legal action or transfer those rights to us and will do all things we request to assist us to enforce those rights and collect payments made under the Policy.

Prime Insurance v. Zito, et al.
00019

K.  Non-Assignable

The interest of the Insured under this Policy cannot be assigned without the prior written consent of the Insurer.

L.  Cancellation and Non-Renewal

1.  The Insured shown in the Declarations may cancel this Policy by mailing a request to cancel to the Insurer.  No prior notice to the Policy's regular coverage ending date is required.

2.  The Insurer may cancel this Policy by mailing first class or by hand delivery to the Insured written notice of cancellation at least:

   a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium or upon your failure to pay any Deductible or any other cost or fee required to be paid under the terms of this Policy; or

   b.  30 days before the effective date of cancellation if we cancel for any other reason.

3.  The Insurer will mail or deliver any notice of cancellation or any other notice to be delivered under the Policy to the Insured's mailing address shown in the Declarations or on any written Endorsement changing such address.

4.  Notice of cancellation will state the effective date of cancellation and the Policy Period will end on that date.

5.  If this Policy is cancelled by the Insured or Insurer, the premium for the period from the date of cancellation to the expiration date will be refunded at the greater of 40% of the total Policy premium and the short-rate, all of which will be deemed the minimum, fully-earned premium for the cancelled Policy. The total premium will be deemed the minimum, fully-earned premium in the event a Claim is made at anytime on the Policy prior to cancellation.  The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, a prepaid proof of mailing is sufficient proof of notice to the Insured.  Notice deposited in the mail in the manner described above shall be effective when so deposited.

7.  If the Insurer decides not to renew this Policy, the Insurer is not required to send any notice of such non-renewal.

8.  At no time will cancellation of this Policy for any reason require the Insurer to refund an amount of premium over or above the minimum, fully-earned premium set out in this Policy.

9.  The Insurer is under no obligation to renew this Policy.  You may request renewal by submitting a written request to renew and tendering the premium then required by us.

M.  Changes

1.  This Policy, including any Endorsements, contains all of the agreements between the Insured and the Insurer concerning the insurance provided by the Policy.  The coverage terms can be amended or waived only by Endorsement issued by the Insurer, and not by any broker or agent, and made a part of the Policy.

2.  Endorsements adding additional buildings, coverage, or otherwise materially changing the Policy will require additional premium to be collected from the Insured before the Endorsement will become effective.  Any additional premium associated with any Endorsement will be calculated by the Insurer based upon its then current rates; although, no specific rate is guaranteed to the Insured.

Prime Insurance v. Zito, et al.
00020

3. Notice by the Insured to any agent, broker, or service provider, or knowledge possessed by any agent, broker, service provider, or by any other person, shall not effect, waive, or change any part of the coverage provided the Insured under the Policy, or limit the Insurer from asserting any right under the terms of the Policy.

N. Subrogation

1. If we pay or provide any benefits for you under this Policy, we are subrogated to all rights of recovery which you have in contract, tort, or otherwise against any person or organization for the amount of benefits we have paid or provided. This means that we may use your right to recover money from that other person or organization, regardless if you have been made whole for your Damage or Loss.

2. Besides the right of subrogation, we have a separate right to be reimbursed or repaid from any money you recover for any Damage or Loss for which we have made payment. We have the right to be reimbursed or repaid first from any money you recover, even if you have not been received payments sufficient to cover all of your Damage or Loss.

3. You agree to furnish us promptly all information that you have concerning any right of recovery you have from other persons or entity and to fully assist and cooperate with us in protecting and obtaining reimbursement and pursuing subrogation rights in as set forth in the Policy.

O. Polygraph Examination

The insured agrees to submit to a polygraph examination within 48 hour of notice to the Insured to submit to such an examination by the Insurer. The results of the polygraph examination can be used as a basis to deny any Claims made under this Policy.

## SECTION V — DEFINITIONS

A. "Actual Cash Value" or "ACV" means:

1. When the Covered Loss is economically repairable, Actual Cash Value means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration, and obsolescence.

2. When the Damage or Loss to property creates a total loss, Actual Cash Value means the market value of property in a used condition equal to that of the destroyed property.

3. Otherwise Actual Cash Value means the market value of new, identical, or nearly identical property less reasonable deduction for wear and tear, deterioration, and obsolescence.

B. "Application" means the application for insurance coverage form, and any information provided therewith, completed by or for or on behalf of the Insured requesting insurance coverage from the Insurer.

C. "Building" means any building or structure and its immediate appurtenant structures described in the Declarations as being covered by this Policy.

D. "Claim(s)" means any demand for Damage or Loss payment under this Policy for direct physical Damage or Loss to a Building, including a written demand, a civil action, or institution of arbitration proceeding.

E. "Claim Expenses" means fees, costs, and expenses, including the Insurer's own internal fees, costs, and expenses, or those of an affiliate, resulting from the investigation, adjustment, dispute, or appeal of a Claim, as authorized by the Company.

F. "Covered Cause of Loss" means those causes of loss specifically identified as covered in the attached Causes of Loss Form identified as "Basic," "Broad," or "Special" depending on the premium paid.

G. "Covered Property" means that property specifically identified in Section I C, and as limited therein.

Prime Insurance v. Zito, et al.
00021

H.  "Damage or Loss" means direct physical loss of or damage to Covered Property.

I.  "Declarations" means the summary of coverage provided in conjunction with this Policy setting forth essential terms that are expressly deemed a part of this Policy.

J.  "Deductible" means the amount set forth in the Declarations that the Insured will pay for each and every Covered Cause of Loss.  The Deductible will be deducted from any Damage or Loss payment made to or for the Insured.

K.  "Endorsement" means any additional coverage or limitation of coverage contained in any attachment or addendum to this Policy.  Any Endorsement is an indispensable and indivisible part of this Policy.

L.  "Limit of Insurance" means the maximum amount the Insurer will be obligated to pay for Damage or Loss or any other sums due under this Policy, the amount of which is set forth in the Declarations, including any portion of the maximum Limit of Insurance identified for a specific Covered Cause of Loss, person, or type or nature of Damage or Loss covered under this Policy.

M.  "Optional Coverage" means coverage specifically identified in the Declarations limiting, modifying, or qualifying any property coverage provided hereunder.

N.  "Policy" means the Policy issued by the Insurer to the Insured, including all Endorsements thereto.

O.  "Policy Period" means the period of time beginning on the "Effective Date," as stated in the Declarations, and ending on the earlier of the initial "Expiration Date," as stated in the Declarations, and any effective cancellation date pursuant to the terms of the Policy regardless of any renewal.  Any renewal starts a new Policy Period for the renewal term from the "Effective Date" of such renewal and ending on the earlier of any effective cancellation date of the renewal pursuant to the terms of the renewed Policy and the "Expiration Date" set forth on the renewal documents.

P.  "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, hazardous materials (such as nuclear, radioactive, toxic, or explosive material, substance, or waste, and any by-products thereof), or any other waste, including materials to be recycled, reconditioned, or reclaimed.

Q.  "Replacement Cost" or "RC" means the cost to replace an item of damaged property as of the date of the Covered Cause of Loss.

R.  "Special Limit" means any limit on any specific types of Damage or Loss identified in the Policy.

S.  "Vacant" means at any time any Building has less than 70% of its square footage used by the Insured to conduct customary business at such Building or is under construction or renovation.

## SECTION VI— REIMBURSEMENT

In the event we provide a defense for an Insured under the Policy and it is at any time determined that any Claim or theory of recovery for which a defense has been provided by us is not covered under the Policy, we expressly reserve the right to seek reimbursement of any Damages and/or Claim Expenses associated with any such Claim or theory of recovery from the Insured, including reimbursement on a prorate basis for that portion of any Claim or theory of recovery not covered if multiple Claims or theories of recovery have been asserted.

## SECTION VII — CONFORMITY TO STATUTE & SEVERABILITY

Any portions of this Agreement that are not in conformity with federal, state, or local laws are to be deemed amended to conform to such laws. Further, the provisions of this Agreement are severable. If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, unenforceable, or void for any reason whatsoever, each such portion, provision, or part shall be severed from the remaining portions, provisions or parts of this Agreement and shall not affect the validity or enforceability of any remaining portions, provisions, or parts.

Prime Insurance v. Zito, et al.
00022

## SECTION VIII — MUTUAL AFFIRMATION

Pursuant to the signature, facsimile or otherwise, appearing on the Application, quote, warranty form, Policy, or any other document provided to the Insurer to obtain insurance coverage, the parties affirm that all documents serve to embody and articulate the entire agreement between the parties hereto, and that the parties unqualifiedly accept and agree to abide by the terms and conditions of the Policy.

## SECTION IX — GOVERNING LAW

This Agreement is entered into in the State of Utah and the Agreement, and any rights, remedies, or obligations provided for in this Agreement, shall be construed and enforced in accordance with the laws of Utah.

## SECTION X — FORUM SELECTION AND CONSENT TO JURISDICTION

The Insured represents that they have purposefully directed their actions to procure the insurance services of the Insurer contained in this Policy and has and/or will make continuous and systematic requests for the Insurer's services on their behalf, and acknowledges that the Insurer's principal place of business is Utah. The Insured acknowledges that by entering into this Agreement the Insured is deemed to be transacting business within the State of Utah, and the Insured consents to the jurisdiction of the courts of the State of Utah to hear and decide claims or disputes arising between the parties related to coverage issues and any payments due the Insured under the Policy.

Prime Insurance v. Zito, et al.
00023

# CAUSES OF LOSS FORM – BROAD

## PCP-99-06

A.  Covered Cause of Loss

When "Broad" is shown on the Declarations, "Covered Causes of Loss" mean losses caused by the following:

1.  Fire.

2.  Lighting.

3.  Explosion, including the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.  This cause of loss does not include loss or damage by:

    a.  Rupture, bursting, or operation of pressure relief devices; or

    b.  Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water.

4.  Windstorm or hail, but not including:

    a.  Frost or cold weather;

    b.  Ice (other than hail), snow or sleet, whether driven by wind or not; or

    c.  Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

5.  Smoke, meaning smoke from any source, causing sudden and accidental loss or damage.  This cause of loss does not include smoke from agricultural smudging or industrial operations.

6.  Aircraft or vehicles, meaning only physical contact of an aircraft, a spacecraft, a self-propelled missile, a vehicle or an object thrown up by a vehicle with the described property or with the building or structure containing the described property.  This cause of loss includes loss or damage by objects falling from aircraft.

    We will not pay for loss or damage caused by or resulting from vehicles you own or which are operated in the course of your business.

7.  Sprinkler leakage, meaning leakage or discharge of any substance from an Automatic Sprinkler System, including collapse of a tank that is part of the Automatic Sprinkler System.  If the building or structure containing the Automatic Sprinkler System is Covered Property, we will also pay the cost to:

    a.  Repair or replace damaged parts of the Automatic Sprinkler System if the damage results in sprinkler leakage or is directly caused by freezing; or

    b.  Tear out and replace any part of the building or structure to repair damage to the Automatic Sprinkler System that has resulted in sprinkler leakage.

    "Automatic Sprinkler System" as used in this document means:

    (1)  Any automatic fire protective or extinguishing system, including sprinklers and discharge nozzles; ducts, pipes, valves and fittings; tanks, their component parts and supports; and pumps and private fire protection mains.

Prime Insurance v. Zito, et al.
00024

(2) When supplied from an automatic fire protective system non-automatic fire protective systems and hydrants, standpipes, and outlets.

8.  Sinkhole collapse, meaning loss or damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include the cost of filling the sinkholes, or sinking or collapse of land into manmade underground cavities.

9.  Volcanic action, meaning direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by airborne volcanic blast or airborne shock waves, ash, dust, or particulate matter or lava flow.

    All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

    This cause of loss does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss or damage to the Covered Property.

10. Riot or civil commotion, including acts of striking employees while occupying the Covered Property and looting occurring at the time and place of a riot or civil commotion.

11. Vandalism, meaning willful and malicious damage to, or destruction of, the Covered Property, however, will not pay for the loss or damage to glass (other than glass building blocks) that is part of a building, structure, or an outside sign, but we will pay for loss or damage to other property caused by or resulting from breakage of glass by vandals caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

12. Falling objects, but we will not pay for loss or damage to personal property in the open or damage to the interior of a Covered Property, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by the falling object.

13. Weight of snow, ice or sleet, but we will not pay for loss or damage to gutters and downspouts or personal property outside of the Covered Property.

14. Water damage, meaning accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance containing water or steam; however, water damage does not include:

    a.  Discharge or leakage from an automatic sprinkler system; or a sump or related equipment and parts, including overflow due to sump pump failure or excessive volume of water;

    b.  The cost to repair any defect that caused the loss or damage;

    c.  Loss or damage caused by or resulting form continuous or repeated seepage or leakage that occurs over a period of 3 days or more; or

    d.  Loss or damage caused by or resulting from freezing, unless you do your best to maintain heat in the building or structure, or you drain the equipment and shut off the water supply if the heat is not maintained.  If coverage applies hereunder, and the building or structure containing the system or appliance is Covered Property, we will also pay the cost to tear out and replace any part of the Covered Property to repair damage to the system or appliance from which the water or steam escapes, but we will not pay the cost to repair any defect that caused the loss or damage.

B.  Exclusions

Notwithstanding the fact that the coverage provided under the Policy is named peril coverage only (meaning only those specific perils named are covered), without expanding coverage beyond the named perils, the following are expressly excluded from coverage:

Prime Insurance v. Zito, et al.
00025

1.  We will not pay for loss or damage caused directly or indirectly by any of the following (such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss):

    a.  Enforcement of any Ordinance or Law: The enforcement of any ordinance or law regulating the construction, use, or repair of any property; or requiring the tearing down of any property, including the cost of removing its debris. This exclusion applies whether the loss results from an ordinance or law that is enforced, even if the property has not been damaged; or the increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling, or demolition of property, or removal of its debris, following a physical loss to that property.

    b.  Earth Movement: Any earth movement (other than sinkhole collapse), such as an earthquake, landslide mine subsidence or earth sinking, but if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

    c.  Water: Water including:

        (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

        (2) Mudslide or mudflow;

        (3) Water that backs up or overflows from a sewer or drain or sump; or

        (4) Water under the ground surface pressing on, or flowing or seeping through foundations, walls, floors or paved surfaces; basements, whether paved or not; or doors, windows or other openings. But if water, as described in d (1) through (4) above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion, or sprinkler leakage.

    d.  Particulates: Any Claim related to, caused by, or arising from, in whole or in part, the actual, alleged, threatened, or suspected existence or presence of mold, mildew, fungi, or silicon dioxide (in any form or mixture with any other dust or particles), including, but not limited to:

        (1) Any sums that any Insured becomes legally obligated to pay as Damages because of Property Damage directly or indirectly relating to the actual, potential, alleged, threatened or suspected existence or presence of mold, mildew, fungi, or silicon dioxide (in any form or mixture with any other dust or particles); or

        (2) Any loss, cost, or expense to:

            (a) Any Insured or any other person or organization, that they may incur in testing for, monitoring, removing, treating, containing, neutralizing, remediating, or disposing of or in any way responding to the actual, potential, alleged, threatened or suspected existence or presence of mold, mildew, fungi, or silicon dioxide (in any form or mixture with any other dust or particles); or

            (b) Any Insured or any other person or organization, that they may incur in connection with any Claim or Suit on behalf of any governmental authority or any person or organization relating to the actual, potential, alleged, threatened or suspected existence or presence of mold, mildew, fungi, or silicon dioxide (in any form or mixture with any other dust or particles).

        The Company neither assumes nor has any duty or obligation to defend any Insured with respect to any Claim or Suit seeking any damages relating to the actual, potential, alleged, threatened or suspected existence or presence of mold, mildew, fungi, or silicon dioxide (in any form or mixture with any other dust or particles).

    e.  Asbestos: Property Damage arising prior to, during and/or subsequent to the Policy Period, based directly or indirectly upon, and arising out of, or related to:

Prime Insurance v. Zito, et al.
00026

(1) Asbestos, asbestos fibers, asbestiform talc, or any material and/or substance containing asbestos, asbestos fibers, or asbestiform talc or any asbestos representing or causing Property Damage; or

(2) Any alleged act, error, omission, or duty involving asbestos, asbestos fibers, asbestiform talc, or any material and/or substances containing asbestos, asbestos fibers, or asbestiform talc, its use, exposure, presence, existence, detection, removal, elimination, or avoidance; or

(3) The use, exposure, presence, existence, detection, removal, elimination, or avoidance of asbestos, asbestos fibers, asbestiform talc or any material and/or substances containing asbestos, asbestos fibers, or asbestiform talc in any environment, building, or structure.

f.  War and Terrorism: War and terrorism including, but not limited to:

Any loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss, including:

(1) War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

(2) Any "act of terrorism" meaning an act including, but not limited to, the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological, or similar purposes, including the intention to influence any government and/or to put the public, or any section of the public, in fear.

g.  Hazardous Materials: Property Damage related to, caused by, or arising from Hazardous Materials including, but not limited to:

(1) The handling, storage, disposal, processing, treatment, or releasing or exposure to Hazardous Materials.

(2) Any loss, cost, or expense arising out of any:

(a) Request, demand, or order (including consent decrees, consent orders, or administrative procedures) that any Insured or others test for, monitor, clean up, remove, contain, treat, or neutralize, or in any way respond to, or assess the effects of Hazardous Materials; or

(b) Claim or Suit by or on behalf of a governmental authority seeking recovery for testing for, monitoring, cleaning up, removing, containing, treating, or neutralizing, or in any way responding to, or assessing the effects of Hazardous Materials.

This Hazardous Materials Exclusion applies to discharge, dispersal, seepage, migration, release, or escape, within a building or in the atmosphere, of Hazardous Materials at or from any premises regardless of whether or not owned, rented, occupied, or controlled by an Insured.

Clean up costs incurred by any Insured of any Hazardous Materials are not Property Damage under this Policy.

"Hazardous Materials" for all purposes of the Policy means any nuclear, radioactive, toxic, or explosive material, substance, or waste, and any by-products thereof, and the explosive toxic, and dangerous properties of such material, substance, or waste and any by-products thereof.

h.  Pollution: Property Damage related to, caused by, or arising from Pollution including, but not limited to:

Prime Insurance v. Zito, et al.
00027

(1) Property Damage arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants at anytime:

    (a) At or from any premises, site, or location that is or was at anytime owned or occupied by, or rented, or loaned to any Insured; or

    (b) At or from any premises, site, or location which is or was at anytime used by or for any Insured or others for the handling, storage, disposal, processing, or treatment of waste or Pollutants; or

    (c) Which are or were at anytime transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom any Insured may be legally responsible; or

    (d) At or from any premises, site, or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations:

        (i) If the Pollutants are brought on or to the premises, site, or location in connection with such operations or work by such Insured, contractor, or subcontractor; or

        (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of Pollutants.

(2) Any loss, cost, or expense arising out of any:

    (a) Request, demand, or order (including consent decrees, consent orders, or administrative procedures) that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants; or

    (b) Claim or Suit by or on behalf of a governmental authority seeking recovery for testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Pollutants.

This Pollution Exclusion applies to discharge, dispersal, seepage, migration, release, or escape, within a building or in the atmosphere, of Pollutants at or from any premises regardless of whether or not owned, rented, occupied, or controlled by an Insured.

"Pollutants" for all purposes of this Policy means any solid, liquid, gaseous, or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, Hazardous Materials or any other waste, including materials to be recycled, reconditioned, or reclaimed.

i.    Legal Violations: Property Damage arising out of the willful violation of a penal statute or ordinance.

j.    Intended Acts and Injury: Property Damage expected or intended from the standpoint of any Insured and Property Damage resulting from or arising out of any conduct which is intended by any Insured regardless of whether any resulting Property Damage was foreseen as a result or consequence of such conduct.

k.    Utility Service: The failure of power or other utility service supplied to the Covered Property, however caused, if the failure occurs away from the Covered Property. But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss, except as to the extent such loss is caused by artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

l.    Governmental Action: Seizure or destruction of property by order of governmental authority. But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered hereunder.

Prime Insurance v. Zito, et al.
00028

2.  We will not pay for loss or damage caused by or resulting from:

   a.  Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires, but if loss or damage by fire results, we will pay for that resulting loss or damage.

   b.  Rupture or bursting of water pipes (other than Automatic Sprinkler Systems), unless caused by a Covered Cause of Loss.

   c.  Leakage or discharge of water or steam resulting from the breaking or cracking of any part of a system or appliance containing water or steam (other than an Automatic Sprinkler System), unless the system or appliance is damaged by a Covered Cause of Loss.

   d.  Explosion of steam boilers, steam pipes, steam engines, or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines, or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion.

   e.  Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage. But if mechanical breakdown results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

   f.  Delay, loss of use or loss of market.

   g.  Smoke, vapor, or gas from agricultural smudging or industrial operations.

   h.  Wear and tear.

   i.  Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage to destroy itself.

   j.  Smog.

   k.  Settling, cracking, shrinking or expansion.

   l.  Insects, birds, rodents or other animals.

   m.  The following causes of loss to personal property:

      (1) Dampness or dryness of atmosphere;

      (2) Changes in or extremes of temperature; or

      (3) Marring or scratching.

      But if loss or damage by the "specified causes of loss" or building glass breakage results, we will pay for that resulting loss or damage.

   n.  Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

   o.  Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

      (1) You do your best to maintain heat in the building or structure; or

      (2) You drain the equipment and shut off the supply if the heat is not maintained.

Prime Insurance v. Zito, et al.
00029

p.  Dishonest or criminal act by you, and of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

  (1) Acting along or in collusion with others; or

  (2) Whether or not occurring during the hours of employment.

  This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

q.  Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

r.  Rain, snow, ice, or sleet damage to personal property in the open.

s.  Collapse, except as provided below, if so specifically provided. But if loss or damage by a Covered Cause of Loss results at the Covered Property, we will pay for that resulting loss or damage.

3.  We will not pay for loss or damage caused by or resulting from any of the following (but if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage):

  a.  Weather conditions: But this exclusion only applies if weather conditions contribute in any way with a cause or event expressly excluded herein to produce the loss or damage.

  b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

  c.  Faulty, inadequate or defective:

    (1) Planning, zoning, development, surveying, or siting;

    (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, of compaction;

    (3) Materials used in repair, construction, renovation or remodeling; or

    (4) Maintenance

    of part or all of any property on or off any Covered Property.

C.  Additional Coverage

Covered Cause of Loss also includes collapse as described and limited in this additional coverage section if the Insured has expressly requested and paid an additional premium for collapse coverage.

1.  We will pay for direct physical loss or damage to Covered Property, caused by collapse of a Covered Property or any part thereof, if the collapse is caused by one or more of the following:

  (a) Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage form fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; as expressly set forth herein.

  (b) Hidden decay;

  (c) Hidden insect or vermin damage;

  (d) Weight of people or personal property;

Prime Insurance v. Zito, et al.
00030

(e) Weight of rain that collects on a roof;

(f) Use of defective material or methods in construction, remodeling, or renovation if the collapse occurs during the course of the construction, remodeling, or renovation. However, if the collapse occurs after construction, remodeling, or renovation is complete and is caused in part by a cause of loss listed in this additional coverage section, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling, or renovation, contributes to the collapse.

2.  If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

    (a) The personal property which collapses is inside a building; and

    (b) The collapse was caused by a cause of loss listed in this additional coverage section.

3.  With respect to the following property:

    (a) Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

    (b) Awnings, gutters and downspouts;

    (c) Yard fixtures.

    (d) Outdoor swimming pools;

    (e) Fences;

    (f) Piers, wharves and docks;

    (g) Beach or diving platforms or appurtenances;

    (h) Retaining walls; and

    (i) Walks, roadways and other paved surfaces.

    If the collapse is caused by a cause of loss listed in this additional coverage section, we will pay for loss or damage to that property only if such loss or damage is a direct result of the collapse of a Covered Property; and the personal property is covered hereunder.

4.  Collapse does not include settling, cracking, shrinkage, bulging or expansion.

5.  This additional coverage for collapse does not increase the Limit of Liability provided under the Policy.

D.  Limitation

We will pay for the loss of animals only if they are killed or their destruction is made necessary. We do not pay for veterinary costs of diminution in value of animals which are not killed or whose destruction is not made necessary.

Prime Insurance v. Zito, et al.
00031

# SERVICE OF SUIT ENDORSEMENT

## PAP-99-01

**This Endorsement changes the terms and conditions of the Policy issued. Please read it carefully!**

In the event of the failure of any Syndicate(s) participating in the insurance afforded hereunder to pay their proportional share of any amount claimed to be due hereunder, such Syndicate(s) at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined with the law and practice of such court.

Service of process in such suit may be made upon the Director of Insurance of the State of Illinois, 320 West Washington Street, Springfield, IL 62767. Syndicate(s) participating in the insurance afforded hereunder agree, in the event of any suit instituted against any one or more, of them with respect to insurance afforded or alleged to be afforded under this Policy, to abide by the final decision of such court or of any Appellate Court in the event of subsequent appeal.

The Director of Insurance of the State of Illinois is authorized and directed to accept service of process on behalf of any Syndicate(s) participating hereunder in any such suit and upon the request of the Insured, to give a written undertaking to the Insured that he will enter a general appearance on behalf of such Syndicate(s) in the event that such suit shall be instituted. Further, pursuant to any statue of any state of the United States which makes provision therefor, the Syndicate(s) hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for the purpose in the statute, as their true and lawful attorney upon whom may be served any lawful process in any suit instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the Secretary of the INEX Insurance Exchange, One South Wacker Drive, Suite 2720, Chicago, IL 60606, as the person to whom said officer is authorized to mail such process or a true copy thereof.

Prime Insurance v. Zito, et al.
00032

# TERRITORIAL RESTRICTION ENDORSEMENT

## PAP-99-02

**This Endorsement changes the terms and conditions of the Policy issued.  Please read it carefully!**

Coverage is not available for contracts in Alaska, Arizona, California, Colorado, Connecticut, Louisiana, New Hampshire, New Mexico, New York, Rhode Island, Texas, and Virginia.

Prime Insurance v. Zito, et al.
00033

# COMMERCIAL LIABILITY INSURANCE POLICY

## PCL-00-01

THIS COMMERICIAL LIABILITY INSURANCE POLICY (the "Policy") is a manuscript policy, meaning it is a negotiated agreement entered into by and between the Insured and the Insurer, and as such it differs significantly from claims made or occurrence-type general liability policies offered by other insurance companies which, in most instances, are approved by state regulatory authorities. The terms of this Policy are contractual and are not merely recitals, and the Policy shall be construed as a whole, including all paragraphs, sections, conditions, provisions, exclusions, and Endorsements. Additionally, this Policy has very strict claim reporting requirements, and all application(s), discovery form(s), warranty form(s), and other forms completed by the Insured to obtain coverage form a part of this Policy and constitute warranties of the Insured to the Insurer.

Generally, coverage is provided hereby only for otherwise covered Claims (as more fully set forth in the Policy):

(1) Which are first made against an Insured during the Policy Period, and

(2) Which result from an Accident occurring during the Policy Period, and

(3) For which written notice is given to the Insurer during the Policy Period.

In addition, coverage is strictly limited to those activities and operations and at those locations listed, described, and defined herein. Various other provisions of this Policy restrict and limit the coverage provided. Please read the entire Policy and all Endorsements carefully to determine your rights and duties and what is and is not covered.

Claim Expenses reduce the available Limits of Liability stated on the Declarations. In the event of any Claim, the total amount of any Policy premium charged is 100% earned and not subject to short-rate or pro-rata adjustment.

Throughout the Policy and any Endorsements, the words "you," "your," "Insured" and "Named Insured" refer to the Insured. The words "we," "us," "our," and the "Company" refer to the Insurer.

Capitalized terms have specific meaning throughout the Policy as defined in the Definitions Section below.

### SECTION I — COVERAGE

A. Insuring Agreement

1. Subject to all of the terms, limitations, conditions, definitions, exclusions, and other provisions of this Policy, we will pay Damages in excess of any SIR that you are legally obligated to pay because of Bodily Injury or Property Damage to which this Policy applies:

   a. Should an Accident causing Bodily Injury or Property Damage result from those specified activities or operations to which this Policy is limited; and

   b. If such Accident occurs during the Policy Period (including any Policy Period extended by a specifically identified Retroactive Date) stated on the Declarations within the United States of America or its territories; and

   c. A Claim arising out of the Accident is made against you and reported to us in writing during the Policy Period and any applicable SIR has been timely paid.

   The date of an Accident is the date upon which an Accident that results in Bodily Injury or Property Damage occurs regardless of when the Bodily Injury or Property Damage is first discovered or first

Prime Insurance v. Zito, et al.
00034

manifest or reported. Claims arising from Accidents occurring prior to the coverage date of the Policy are not covered regardless of when Damages are first manifest or discovered.

2.  We have both the right and the duty to provide for your defense with respect to a Claim covered by the Policy. We have the exclusive right to designate and appoint legal counsel to represent you and to otherwise control such defense. Notwithstanding anything to the contrary, our duty to provide for such defense will immediately terminate:

    a.  When the applicable Limits of Liability of the Policy are exhausted by payment of Damages and/or Claim Expenses;

    b.  If the Insured fails to fulfill any SIR obligation imposed by this Policy in a timely manner;

    c.  If the Application attached hereto and forming a part hereof, including any supplemental information related thereto, is discovered by us to contain any material inaccuracies, omissions, mistakes, misrepresentation, false statements or errors of fact, regardless of whether the misrepresentationwas a result of the Insured's insurance broker or agent's errors of omission, commission, mistake, negligence, fraud, or criminal conduct; or

    d.  If you violate any of the conditions set forth in this Policy.

3.  We have the sole right, but not the duty, under this Policy to settle those otherwise covered Claims for which the proposed amount to be paid as Damages does not exceed the applicable Limits of Liability. Any such settlement will be binding upon the Insured and will not require the Insured's prior consent or ratification. Payment of settlement funds or expenses by us shall not relieve you of your duty to make timely payment of any applicable SIR.

4.  Subject to the terms of this Policy and the Limits of Liability, we will only pay with respect to any Claim we defend:

    a.  Claim Expenses we incur; or

    b.  Costs of Suit pursuant to statute or order of court after a verdict is entered against the Insured in the Suit; and

    c.  Any judgment or part of a judgment that does not exceed our Limit of Liability; and

    d.  All interest on any judgment that accrues after entry of the judgment and before we pay, tender, or deposit with the court that part of the judgment that does not exceed our Limits of Liability.

5.  Any of the above payments are part of and will reduce the Limits of Liability provided by this Policy. Notwithstanding the foregoing, we have no obligation to defend any criminal investigation or prosecution of or criminal proceeding against any Insured.

B.  Exclusions

This Policy does not cover, and we will not be obligated to defend you against or pay Damages on your behalf for, any of the following:

1.  Any obligation of an Insured under workers compensation, disability benefits, unemployment compensation law, or any similar law, or any law relating to any employer/employee benefits.

2.  Bodily Injury to:

    a.  An employee of an Insured arising out of and in the course of:

        (1)  Employment by an Insured, or

Prime Insurance v. Zito, et al.
00035

(2) Performing duties related to the conduct of the Insured's business; or

b. The spouse, child, parent, brother, or sister of an employee of an Insured as a consequence of Bodily Injury to such employee.

This Bodily Injury Exclusion applies:

(1) Whether an Insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share Damages with or repay someone else who must pay Damages because of the injury, including Damages awarded for contribution or indemnity suits.

3. Bodily Injury or Property Damage:

a. Alleged by one Insured against any other Insured (if the Insured is an organization, this exclusion shall apply to any parent, subsidiary, or affiliated company of the Insured); or

b. Arising out of acts of the Insured or third-party general contractors, subcontractors, independent contractors, or property owners or their employees involving Claims or Suits alleging negligent hiring of employees or subcontractors, failure to contract with subcontractors, negligent supervision, or any liability relating to any independent contractor's service or failure to provide service.

4. Claims or Suits brought by:

a. One Insured or any of its successors, assigns, subsidiaries, parent entities, agents, or affiliates against another Insured or any of its successors, assigns, subsidiaries, parent entities, agents, or affiliates; or

b. Any division or department of any of the entities described in subparagraph a of this section; or

c. Any officer, director, or employee of any of the entities described in subparagraph a of this section.

5. Claims related to or arising out of:

a. Employment policies or practices of an Insured including, but not limited to, refusal to employ, discrimination, termination, discharge, harassment, coercion, demotion, evaluation, reassignment, discipline, defamation, or humiliation; or

b. Employment benefit laws affecting an Insured; or

c. Employment of any person by the Insured in violation of the law as to age, or of any person under 14 years of age if there is no limiting legal age limit; or

6. Claims related to or arising out of the actual, alleged, or threatened commission of any act relating to sexual activity including, but not limited to, sexual abuse, molestation, or harassment. Claims arising out of or related to such sexual activity are excluded from coverage:

a. Whether or not caused or committed by or at the direction of the Insured, its employees, patrons, patients, guests, or other persons lawfully or unlawfully on the Insured's premises or who lawfully or unlawfully come in contact with the Insured's patients, patrons, or employees, or guests;

b. Notwithstanding that the Claim may allege negligent hiring or entrustment, placement, training, or supervision, failure to provide adequate security or any other allegation of intentional, negligent, or reckless conduct which facilitated or permitted the sexual activity to occur; and

c. Whether or not any Bodily Injury or Property Damage sustained by any person as a result of such activity was expected or intended by the person who engaged in the activity.

Prime Insurance v. Zito, et al.
00036

7. Claims related to or arising out of actual or alleged assault and/or battery, whether caused by or at the direction of the Insured, the Insured's employees or patrons, or from any cause whatsoever. This Policy further excludes claims, accusations, or charges of negligent hiring, placement, training, or supervision regarding any actual or alleged assault and battery. No coverage is provided for Claims alleging negligent hiring or entrustment, training or supervision, failure to provide adequate security, or other allegations of intentional, negligent, or reckless conduct related to actual or alleged assault and/or battery.

8. Personal Injury.

9. Advertising Injury.

10. Bodily Injury or Property Damage for which an Insured is obligated to pay Damages by reason of the assumption of liability under any contract or agreement. This exclusion does not apply to liability for Damages:

    a. Assumed in a contract or agreement specifically approved by the Insurer by endorsement to this Policy, provided the Bodily Injury or Property Damage occurs subsequent to execution of the contract or agreement; or

    b. That the Insured would have in the absence of any contract or agreement.

11. Bodily Injury or Property Damage for which any Insured may be held liable by reason of:

    a. Causing or contributing to the intoxication of any person; or

    b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    c. The violation of any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages or controlled substances.

12. Bodily Injury or Property Damage based upon or arising out of an Insured's ownership, selection chartering, use, operation, rental, service, maintenance, entrustment to others, or Loading or Unloading of any Auto, land motor vehicle, utility vehicle, service vehicle, Mobile Equipment, aircraft, or watercraft, including any apparatus attached thereto.

13. Bodily Injury or Property Damage arising out of the use of firearms by, on behalf of, or at the direction of any Insured, or out of the existence, use, storage, or handling of any material constituting, or intended for use as, an explosive or which have known explosive properties.

14. Bodily Injury or Property Damage arising out of the ownership, boarding, or use of any kind of animal, whether or not domesticated.

15. Bodily Injury or Property Damage arising out of the ownership, use, operation, maintenance, or supervision of any type of mechanical device or equipment, whether or not such device or equipment is ridden by any person or persons.

16. Bodily Injury or Property Damage directly or indirectly resulting from acts, treatments, services, lack of services, errors or omissions, or other actions provided by the Insured outside of the Policy Period regardless of when any injury or Damages manifests itself or is first discovered.

17. Coverage or indemnity for any Claim or Suit arising prior to, during and/or subsequent to the Policy Period, based directly or indirectly upon, and arising out of, or related to:

    a. Asbestos, asbestos fibers, asbestiform talc, or any material and/or substance containing asbestos, asbestos fibers, or asbestiform talc or any asbestos related to Bodily Injury or Property Damage, or exposure to asbestos, asbestos fibers, asbestiform talc fibers, asbestiform talc in any form, and/or

Prime Insurance v. Zito, et al.
00037

manifestation of any asbestos related to Bodily Injury, including but not limited to asbestos, mesothelioma, and/or bronchogenic carcinoma; or

b.  Any alleged act, error, omission, or duty involving asbestos, asbestos fibers, asbestiform talc, or any material and/or substances containing asbestos, asbestos fibers, or asbestiform talc, its use, exposure, presence, existence, detection, removal, elimination, or avoidance; or

c.  The use, exposure, presence, existence, detection, removal, elimination, or avoidance of asbestos, asbestos fibers, asbestiform talc or any material and/or substances containing asbestos, asbestos fibers, or asbestiform talc in any environment, building, or structure.

18. Any Claim related to, caused by, or arising from Pollution including, but not limited to:

a.  Bodily Injury or Property Damage arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of Pollutants at anytime:

(1) At or from any premises, site, or location that is or was at anytime owned or occupied by, or rented, or loaned to any Insured; or

(2) At or from any premises, site, or location which is or was at anytime used by or for any Insured or others for the handling, storage, disposal, processing, or treatment of waste or Pollutants; or

(3) Which are or were at anytime transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom any Insured may be legally responsible; or

(4) At or from any premises, site, or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations:

(a) If the Pollutants are brought on or to the premises, site, or location in connection with such operations or work by such Insured, contractor, or subcontractor; or

(b) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of Pollutants.

b.  Any loss, cost, or expense arising out of any:

(1) Request, demand, or order (including consent decrees, consent orders, or administrative procedures) that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants; or

(2) Claim or Suit by or on behalf of a governmental authority seeking recovery for testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Pollutants.

This Pollution Exclusion applies to discharge, dispersal, seepage, migration, release, or escape, within a building or in the atmosphere, of Pollutants at or from any premises regardless of whether or not owned, rented, occupied, or controlled by an Insured.

19. Any Claim related to, caused by, or arising from Hazardous Materials including, but not limited to:

a.  The handling, storage, disposal, processing, treatment, or releasing or exposure to Hazardous Materials.

Prime Insurance v. Zito, et al.
00038

b.    Any loss, cost, or expense arising out of any:

(1) Request, demand, or order (including consent decrees, consent orders, or administrative procedures) that any Insured or others test for, monitor, clean up, remove, contain, treat, or neutralize, or in any way respond to, or assess the effects of Hazardous Materials; or

(2) Claim or Suit by or on behalf of a governmental authority seeking recovery for testing for, monitoring, cleaning up, removing, containing, treating, or neutralizing, or in any way responding to, or assessing the effects of Hazardous Materials.

This Hazardous Materials Exclusion applies to discharge, dispersal, seepage, migration, release, or escape, within a building or in the atmosphere, of Hazardous Materials at or from any premises regardless of whether or not owned, rented, occupied, or controlled by an Insured.

Clean up costs incurred by any Insured of any Hazardous Materials are not Property Damage under this Policy.

20. Bodily Injury or Property Damage arising out of the willful violation of a penal statute or ordinance.

21. Bodily Injury or Property Damage arising out of the acts of an Insured's employee or agent outside the scope of his or her employment or duties.

22. Bodily Injury or Property Damage resulting from the management of property.

23. Bodily Injury or Property Damage expected or intended from the standpoint of any Insured.

24. Property Damage to:

a.    Property you own, use, rent, or occupy regardless of when the Property Damage occurs or was discovered;

b.    Personal property in your care, custody, or control;

c.    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the Property Damage arises out of those operations;

d.    Premises you sell, give away, or abandon if the Property Damage arises out of any part of those premises regardless of when the Property Damage occurs or was discovered;

e.    Property loaned to you; or

f.    That particular part of any property that must be restored, repaired, or replaced because Your Work was improperly performed on it.

25. Property Damage to any goods or products manufactured, sold, handled, distributed, or disposed of by you, by others trading under your name, or by a person or organization whose business or assets you have acquired.

26. Property Damage to Your Work.

27. Bodily Injury and Property Damage occurring away from premises you own or rent and arising out of Your Product or Your Work or as a result of any reliance upon any warranty or representation, except as caused by:

a.    Your Product that is still in your physical possession; or

b.    Your Work that has not yet been completed and has not been abandoned.

Prime Insurance v. Zito, et al.
00039

28. Property Damage to Impaired Property or property that has not been physically damaged, arising out of:

   a. A defect, deficiency, inadequacy, or dangerous condition in Your Product or Your Work; or

   b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

   This Property Damage Exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical damage to Your Product or Your Work after it has been put to its intended use.

29. Any Claim for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of Your Product, Your Work, or Impaired Property if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

30. Bodily Injury or Property Damage which directly or indirectly is the result of an act, error, or omission which was performed by the Insured prior to the Policy Period stated on the Declarations, regardless of the date the Bodily Injury or Property Damage was first discovered, first manifest, or reported.

31. Bodily Injury or Property Damage arising out of the rendering or failure to render professional services.

32. Any Claim for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise, trebled or otherwise multiplied damages or any multiplied portion of a compensatory award, or the return or restitution of legal fees, costs, and expenses. Claims for or awards against any Insured for punitive or exemplary damages, fines, statutory penalties, or sanctions, whether imposed by law or otherwise, trebled or otherwise multiplied damages or any multiplied portion of a compensatory award are not covered by the Policy regardless of whether they are demanded or awarded based upon the conduct of an Insured or upon the conduct of others for whose conduct the Insured may be deemed to be vicariously liable.

33. Any Claim seeking relief other than for monetary damages including, but not limited to, claims for injunctions, temporary restraining orders, or other equitable relief or requiring any Insured to take any action other than the payment of compensatory monetary damages for Bodily Injury or Property Damage as defined herein.

34. Any Claim filed under:

   a. The Racketeer Influenced and Corrupt Organization Act; or

   b. The Employee Retirement Income Security Act.

35. Any Claim related to, caused by, or arising from mold and fungi including, but not limited to:

   a. Any sums that any Insured becomes legally obligated to pay as Damages because of Bodily Injury, Property Damage, Personal Injury, Advertising Injury, or Medical Payments directly or indirectly relating to the actual, potential, alleged, or threatened presence of mold, mildew, or fungi of any kind whatsoever, or any materials containing them at anytime; or

   b. Any loss, cost, or expense to:

      (1) Any Insured or any other person or organization, that they may incur in testing for, monitoring, removing, treating, or in any way responding to the actual, potential, alleged, or threatened presence of mold, mildew, or fungi of any kind whatsoever, or any materials containing them, whether as a result of a request, demand, statutory, or regulatory requirement or otherwise; or

      (2) Any Insured or any other person or organization, that they may incur in connection with any Claim or Suit on behalf of any governmental authority or any person or organization relating to the

Prime Insurance v. Zito, et al.
00040

actual, potential, alleged, or threatened presence of mold, mildew, or fungi of any kind whatsoever, or any materials containing them.

The Company neither assumes nor has any duty or obligation to defend any Insured with respect to any Claim or Suit seeking any damages related to or resulting from mold, mildew, or fungi.

36. Any Claim related to, caused by, or arising from war and terrorism including, but not limited to:

Any loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from, or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss, including:

a.  War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

b.  Any "act of terrorism."

For the purpose of this War and Terrorism Exclusion, an "act of terrorism" means an act including, but not limited to, the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological, or similar purposes, including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This War and Terrorism Exclusion also excludes loss, damage, cost, or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing, or in any way related to acts anywhere in this war and terrorism section.

If the Company alleges that by reason of this War and Terrorism Exclusion, any loss, damage, cost, or expense is not covered by this Policy, the burden of proving the contrary shall be upon the Insured.

In the event any portion of this War and Terrorism Exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect. War and terrorism coverage through an Endorsement in compliance with the U.S. Terrorism Risk Insurance Act of 2002 may be purchased for an additional premium.

37. Any Claim related to, caused by, or arising from Property Damage caused directly or indirectly by fire.

38. Any Claim for Property Damage:

a.  Arising out of blasting or explosion regardless of whether such explosion or damage caused thereby was intentional or unintentional, excluding Property Damage arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or

b.  Caused by the collapse of or structural injury to any building or structure due to:

(1) Grading, excavating, burrowing, filling, back filling, tunneling, pile driving, and cofferdam or caisson work; or

(2) Moving, shoring, underpinning, raising or demolition of any building or structure, or removal or rebuilding of any structural support of that building or structure;

c.  Any Property Damage underground to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus used with them beneath the surface of the ground or water caused by or occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling, pile driving, chemical application, hole drilling, or similar type underground activity.

Prime Insurance v. Zito, et al.
00041

**SECTION II — WHO IS AN INSURED?**

A. An Insured is any person and/or entity expressly designated on the Declarations as an Insured. If the person or entity designated as an Insured is:

    1. An individual, the individual and the individual's spouse are Insureds, but only with respect to the conduct of a business of which the individual or the individual and/or the spouse are the sole owners.

    2. A partnership or joint venture, the partnership or joint venture is the Insured; however, the partnership or joint venture's partners or members are also Insureds, but only with respect to their involvement in conducting the business of the partnership or joint venture.

    3. A limited liability company, the limited liability company is the Insured; however, the limited liability company's members are also Insureds, but only with respect to their involvement with the limited liability company's business, and the limited liability company's managers are Insureds, but only with respect to their duties as the limited liability company's managers.

    4. An organization other than a partnership, joint venture, or limited liability company, such organization is the Insured; however, the organization's executive officers and directors are Insureds, but only with respect to their duties as the organization's officers or directors. Such organization's stockholders are also Insureds, but only with respect to their liability as stockholders.

B. Each of the following is also an Insured:

    1. Your employees, other than your executive officers or the managers of your limited liability company (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these employees is an Insured for:

        a. Bodily Injury:

            (1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-employee while that co-employee is either in the course of his or her employment or performing some duties related to the conduct of your business;

            (2) To the spouse, child, parent, brother, or sister of that co-employee as a consequence of any injury to persons identified in subparagraph a (1) above;

            (3) For which there is any obligation to share Damages with or repay someone else who must pay Damages because of the injury described in subparagraphs a (1) or (2) above; or

            (4) Arising out of his or her providing or failing to provide professional health care services.

        b. Property Damage to property owned, occupied, or used by, rented to, in the care, custody, or control of, or over which physical control is being exercised for any purpose by you, any of your employees, any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    2. Any person (other than your employee) or any organization while acting as your real estate manager.

    3. Any person or organization having proper temporary custody of your property if you die, but only:

        a. With respect to liability arising out of the maintenance or use of that property; and

        b. Until your legal representative has been appointed.

Prime Insurance v. Zito, et al.
00042

    4.  Your legal representative if you die, but only with respect to their liability for activities authorized and sponsored by and performed on your behalf.

C.  Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as an Insured if there is no other similar insurance available to that organization.  However:

    1.  Coverage under this provision is afforded only until the 60th day after you acquire or form the organization or the end of the Policy Period, whichever is earlier; and

    2.  Coverage does not apply to Bodily Injury or Property Damage that occurred before you acquired or legally formed the organization.

## SECTION III — LIMITS OF LIABILITY

A.  The Limits of Liability shown on the Declarations and the conditions set forth below fix the most we will pay regardless of the number of:

    1.  Insureds; or

    2.  Claims made or Suits brought; or

    3.  Persons or organizations making Claims or bringing Suits.

B.  Each Accident Limit of Liability listed on the Declarations is the most we will pay for any combination of Damages and/or Claim Expenses related to Bodily Injury and Property Damage arising out of any one Accident.  Claim Expenses reduce the available Limits of Liability.

C.  This Policy is subject to any and all Sub-limits identified in this Policy, including any identified on the Declarations or on any included Endorsement.

D.  All Claim settlement costs and Claim Expenses are included within the Limits of Liability shown on the Declarations and are not in addition to such Limits of Liability.  The Limits of Liability apply to the total sum which the Insured, or the Insurer, become legally obligated to pay by reason of any Bodily Injury or Property Damage for which coverage is provided by the Policy, including any supplementary payment either through adjudication or compromise, any hospital, medical, or funeral charges, and any sums paid or payable as salaries, wages, compensation, fee charges, interest, or expenses of doctors, nurses, investigators, attorneys, and other persons relating to any settlement, adjustment, investigation, or defense of any Claim.

E.  The following items affect the Limits of Liability as outlined:

    1.  A single Accident, or the accumulation of more than one Accident during the Policy Period, may cause the per Accident limit and/or the annual aggregate maximum Limit of Liability to be exhausted at which time the Insured will have no further benefits under the Policy;

    2.  Upon the exhaustion of the Limit of Liability, the Insured may request the Insurer to reinstate the original Limits of Liability for the remainder of the Policy Period for an additional coverage charge as may be calculated and offered by the Insurer on the Policy issued; although, the Insurer has no obligation to accept the Insured's request; and

    3.  The Insured understands and agrees that the Insurer has no obligation under the coverage provided by the Policy to notify the Insured of the possibility that the maximum coverage payable is or may be exhausted by any Accident or combination of Accidents that occur or may occur during the Policy Period. The Insured, in his, her, or its sole discretion, must determine if additional coverage should be purchased, and the Insurer has no duty to make a determination or advise the Insured concerning additional coverage.

Prime Insurance v. Zito, et al.
00043

F.  Notwithstanding anything contained in this Policy to the contrary, the Insurer's financial obligation imposed by the coverage with respect to all Claims, including any Claim Expenses and other related costs, incurred hereunder shall not exceed the amount specified on the Declarations as the aggregate Limit of Liability.

G.  Amounts payable under paragraphs B, C, and D of this section above shall directly diminish the respective Limits of Liability as stated on the Declarations.

## SECTION IV — SELF-INSURED RETENTION (SIR) OBLIGATION

A.  The Insurer's obligation to make any payments under this Policy shall only arise after the payment by the Insured of any SIR amount, as specified on the Declarations, has been timely tendered. The SIR amount shall apply separately to each and every Claim and to each and every Insured. The Insurer shall have no duty to make any payment for the defense or settlement of any Claim, or for the satisfaction of any judgment, until the Insured has paid the SIR. The Limits of Liability of this Policy include the amount of the SIR and are not in excess thereof.

B.  The Insured will pay 100% of the SIR on each and every Claim for Damages and/or Claim Expenses before any payment is due pursuant to the terms of this Policy. The SIR applies to each and every Claim regardless of whether a claimant presents multiple Claims. The following obligations and restrictions apply to the SIR:

1.  The Insurer may assume control and defense of all Claims, Suits, and proceedings, which at its sole discretion may involve this Policy. Such assumption of the control and defense of any Claim, Suit, or proceeding by the Insurer, including the selection and/or appointment of defense counsel by the Insurer, shall not affect the Insured's responsibility to pay the SIR.

2.  A separate SIR shall be paid for each Claim. Multiple Claims arising from the same event shall be subject to multiple SIRs.

3.  The Insurer, at its sole discretion and without the consent of the Insured, may agree to the payment of all or any part of the SIR in satisfaction of Claim Expenses, settlements, Damages, or judgments.

4.  The Insurer, at its sole discretion, may pay the amount of the SIR from its own funds in satisfaction of Claim Expenses, Damages, settlements or judgments. In the event the Insurer chooses to make such payment, the Insured shall reimburse the Insurer within 15 days of the mailing of a demand by the Insurer.

5.  The Insurer, at its sole discretion, may direct the Insured to pay all or any part of the SIR to a third party in satisfaction of Claim Expenses incurred or Damages paid or of settlement or judgment amounts. The Insured shall make any required SIR payment within 15 days of the Insurer's direction to make such payment.

6.  In the event the Insured fails to reimburse the Insurer for any SIR amount advanced by the Insurer and the Insurer incurs collection expenses, the Insurer shall be entitled to recover such collection expenses, including reasonable attorneys' fees, costs and expenses, from the Insured to the fullest extent permitted by law.

7.  The Insurer has the right, but not the duty, to settle any covered Claim for which the proposed amount to be paid in Damages and Claim Expenses does not exceed the applicable Limits of Liability. Such settlements are binding on the Insured and do not require the Insured's prior consent or ratification.

    a.  Any settlement agreed to by the Insurer pursuant to its settlement right shall be subject to cancellation by the Insurer if the Insured fails to pay the SIR timely.

    b.  If any settlement agreed to by the Insurer is not concluded due to the failure of the Insured to pay the SIR for any reason, the liability of the Insurer for all Claims Expenses, Damages, and/or settlement and judgment amounts shall be limited to the amount for which the Claim could have been settled but for the Insured's failure to tender the SIR.

Prime Insurance v. Zito, et al.
00044

8.  The Policy shall have available at the option of the Insurer, medical benefits payable as expenses in excess of any other collectible insurance or benefit available to any injured third party. The maximum benefit is $1,000.00 per person, with an aggregate limit of $5,000.00 per Policy Period.

9.  This Policy shall not apply to any Claim first reported to the Insurer while the Insured is in default in the payment of any SIR due from the Insured.

10. Failure to timely pay the SIR as required shall be considered to be the same as failure to pay premium when due, and the Insurer may, at its sole discretion, cancel the Policy for such non payment subject to the same notice requirements as set forth in the Policy for cancellation for non-payment of premium. Such cancellation shall not relieve the Insured of its duty to pay any SIR, and the Insurer may offset any return premium due the Insured against any unpaid SIR and take any other necessary steps to collect any unpaid SIR.

## SECTION V — CONDITIONS

A. Notice of Accident, Potential Claim, Claim, or Suit

1.  As an express condition precedent to coverage under this Policy, you must give us immediate written notice, as soon as possible and in no event later than 72 hours, of any incident, event, occurrence, loss, or Accident which might give rise to a Claim covered by this Policy. Written notice must be given to: Claims Direct Access, P.O. Box 4439, Sandy, Utah 84091-4439, U.S.A. Phone: (877) 585-2849 or (801) 304-5530; Fax: (877) 452-6909 or (801) 304-5536, and include:

    a.  How, when, and where the incident, event, occurrence, loss, or Accident took place;

    b.  The names and addresses of any injured persons and witnesses; and

    c.  The nature and location of any injury or damage arising out of the Accident.

2.  You and any other involved Insured must:

    a.  Immediately or at the earliest practicable moment, and in no event later than 10 days after receipt by you, send us copies of any demands, notices, summonses, or legal papers received in connection with any Claim or Suit and act in all diligence and prudence to resolve the Claim or Suit; provided, however, that no settlement in excess of any applicable SIR will be agreed to by the Insured without the Insurer's express written consent;

    b.  Authorize us to obtain records and other information;

    c.  Cooperate with us in the investigation, settlement, or defense of the Claim or Suit—the Insurer may require that the Insured submit to examination or questioning, attend hearings, depositions, and trials—additionally, in the course of investigation or defense, the Insurer may require written and/or sworn statements concerning the Claim; and

    d.  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured, or which provides similar benefits to the Insured, because of injury or damage to which this Policy may also apply.

3.  No Insured will, except at his own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our prior consent in excess of any applicable SIR without prior written consent of the Insurer.

B. Legal Action Against Us

No person or organization has a right under this Policy to:

1.  Join the Insurer as a party or otherwise bring them into a Suit asking for Damages from an Insured; or

2.  Sue the Insurer under this Policy unless all of the terms of the Policy have been fully complied with by the Insured.

A person or organization may sue the Insurer to recover on an Agreed Settlement or a final judgment obtained after an actual trial against an Insured, but the Insurer will not be liable for Damages that are not payable under the terms of this Policy or that are in excess of the applicable Limits of Liability available to an Insured.

C.  Other Insurance

1.  If other valid and collectible insurance, whether primary, excess, or contingent or on any other basis, including any form of self-insurance or SIR, is available to an Insured for a loss covered under this Policy, then:

a.  This Coverage is excess over the other insurance, including any form of self-insurance or SIR; and

b.  We will have no duty to defend any Claim or Suit that any other insurer has a duty to defend. If no other insurer or issuer of a form of self-insurance or SIR defends, we may undertake to do so, but we will then be entitled to enforce the Insured's rights against those other insurers, self-insurers, or self-insured entity for defense costs, contribution, or indemnity.

2.  When both this Policy and other insurance, whether primary, excess, or contingent or on any other basis, including any form of self-insurance or SIR, apply to the loss on the same basis, we will not be liable under this Policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

a.  If all such other insurance provides for contribution by equal shares, we shall not be liable for a greater proportion of such loss than that which would be payable if each Insurer or self-insured entity contributes an equal share until the share of each Insurer or self-insured entity equals the lowest applicable Limits of Liability under any one policy or coverage contract or the full amount of the loss is paid. With respect to any amount of the loss not so paid, each remaining Insurer or self-insured entity will then contribute an equal share of the remaining amount of the loss until each such Insurer has paid its limit in full or the full amount of the loss is paid.

b.  If all such other insurance does not provide for contribution by equal shares, the Insurer shall not be liable for a greater proportion of such loss than the applicable Limits of Liability under this Policy bears to the total applicable Limits of Liability of all other valid and collectible insurance applicable to such loss.

3.  If this Policy and any other policy or coverage contract issued to you by us or any company affiliated with us apply to the same Incident, the aggregate maximum Limit of Liability or any applicable Sub-limits under all of the policies and coverage contracts shall not exceed the highest applicable Limit of Liability or Sub-limit under any one policy or coverage contract. This condition does not apply to any policy or coverage contract issued by us, or an affiliated company, specifically to apply as excess insurance over this Policy.

D.  Premium

1.  We will compute the premium for this Policy in accordance with our rules and rates at the time coverage is issued or renewed on behalf of the Insured.

2.  The premiums shown on this Policy as the advance premiums are minimum-earned and deposit premiums only. At the close of each audit period, we will compute the earned premium for the Policy Period shown on the Declarations. Audit premiums are due and payable on notice to the Insured. If the sum of the advance and audit premiums paid for the Policy Period is greater than the earned premium charge, any prepaid premium charges become the fully earned premiums for the Policy Period.

3.  The Insured must keep records of the information we need for coverage charge computation and send us

Prime Insurance v. Zito, et al.
00046

copies at such times as we may request them.

4.  In the event of any Claim, the minimum, fully-earned premium for the Policy will be 100% of the total premium stated on the Declarations, and such minimum, fully-earned premium will replace any other minimum-earned premiums charged and will not be subject to short-rate or pro-rata adjustment.

5.  In the event the Insured fails to tender the required premium amount and the Insurer incurs collection expenses, the Insurer shall be entitled to recover all costs of collection including, but not limited to reasonable attorneys' fees, costs, and expenses from the Insured.

E.  Insured's Representations and Warranties

By accepting this Policy, you represent, warrant, and agree that:

1.  The completed Application and any supplemental applications or other documentation provided to obtain this Policy do not contain any material inaccuracies, omissions, mistakes, misrepresentation, false statements or errors of fact, regardless of whether the information was provided by you or your broker or agent;

2.  You understand the information provided in and with your Application for insurance has been relied upon by the Insurer in pricing coverage and issuing the Policy and the Application, along with any other information provided by you, forms a part of the Policy; and

3.  The Policy is a "manuscript policy," which means it does not follow any "standard" insurance policy form and represents a negotiated agreement between you and the Insurer, and you had the opportunity to seek the advice of legal counsel with regard to the negotiations for and the execution and performance of the Policy; and

4.  Any insurance broker or agent involved in obtaining the Policy is represents you and not the Insurer, and the broker or agent is not authorized to bind coverage on behalf of the Insurer, and you do not assume the broker or agent has any implied or apparent authority to bind the Insurer; and

5.  You are subject to all the Policy provisions, terms, and conditions.

F.  Transfer of Rights of Recovery Against Others To Us

If an Insured has rights to recover all or a part of any payment for Damages or Claim Expenses we have made under this Policy from any person or organization, those rights are hereby transferred to the Insurer. The Insured must do nothing after the loss to impair these rights. At our request, the Insured will bring Suit or transfer those rights to us and will do all things we request to assist us to enforce those rights and collect payments made under the Policy.

G.  Non-Assignable

The interest of the Insured under this Policy cannot be assigned without the prior written consent of the Insurer.

H.  Cancellation and Non-Renewal

1.  The Insured shown on the Declarations may cancel this Policy by mailing a request to cancel to the Insurer.  No prior notice to the Policy's regular coverage ending date is required.

2.  The Insurer may cancel this Policy by mailing first class or by hand delivery to the Insured written notice of cancellation at least:

    a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium or upon your failure to pay any SIR premium or any other cost or fee required to be paid under the terms of this Policy; or

    b.  30 days before the effective date of cancellation if we cancel for any other reason.

3.  The Insurer will mail or deliver any notice of cancellation or any other notice to be delivered under the Policy to the Insured's mailing address shown on the Declarations or on any written Endorsement changing such address.

4.  Notice of cancellation will state the effective date of cancellation and the Policy Period will end on that date.

5.  If this Policy is cancelled by the Insured or Insurer, the premium for the period from the date of cancellation to the expiration date will be refunded at the greater of 40% of the total Policy premium and the short-rate, all of which will be deemed the minimum, fully-earned premium for the cancelled Policy. The total premium will be deemed the minimum, fully-earned premium in the event a Claim is made at anytime on the Policy prior to cancellation. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, a prepaid proof of mailing is sufficient proof of notice to the Insured. Notice deposited in the mail in the manner described above shall be effective when so deposited.

7.  If the Insurer decides not to renew this Policy, the Insurer is not required to send any notice of such non-renewal.

8.  At no time will cancellation of this Policy for any reason require the Insurer to refund an amount of premium over or above the minimum, fully-earned premium set out in this Policy.

I.  **Changes**

This Policy, including any Endorsements, contains all of the agreements between the Insured and the Insurer concerning the insurance provided by the Policy. The coverage terms can be amended or waived only by Endorsement issued by the Insurer, and not by any broker or agent, and made a part of the Policy.

Endorsements adding additional Insureds, coverage, or otherwise materially changing the Policy will require additional premium to be collected from the Insured before the Endorsement will become effective. Any additional premium associated with any Endorsement will be calculated by the Insurer based upon its then current rates; although, no specific rate is guaranteed to the Insured.

J.  **Examinations, Inspections, and Surveys**

The Insurer has the right, but is not obligated to:

1.  Examine and audit your books and records as they relate to this Policy at anytime during the Policy period and up to three years thereafter;

2.  Make inspections and surveys of the Insured and its operations, premises, equipment, property, and books at anytime;

3.  Prepare reports on the results of the inspections and surveys, and provide copies of said reports to the Insured; and

4.  Recommend and/or require changes, repairs, or other acts to be completed as a condition precedent to continued coverage under the Policy.

Prime Insurance v. Zito, et al.
00048

The inspections, surveys, reports, or recommendations relate to the insurability of an Insured and the coverage charge to be made. We do not make safety inspections, undertake to provide legal advice or opinions, or perform the duty to any person or organization to provide for the health or safety of workers or the public, and we do not warrant that conditions of the Insured's premises or other working environment under the Insured's control are safe or healthy, or comply with any or all federal, state, county, or local laws, regulations, codes, or standards. This limitation of our service applies not only to us, but also to any rating, advisory rating service, or similar organization or individuals that may provide insurance inspections, surveys, reports, or recommendations at the request of the Insurer.

K. Premium Audit

The initial premium for this Policy represents a minimum estimated premium based upon the exposures you told us you would have when you requested coverage. We expressly retain the right to conduct a premium audit of your records at anytime to determine if the exposures are ultimately greater than you told us. This premium audit may take the form of a request of you to provide proof of exposures by completing a self-audit form and supplying any type of supporting business records (such as proving gross receipts) or an audit conducted by our agent by physically inspecting your books and records. In the event you fail to comply with any premium audit request, including failing to provide any requested information, you authorize us to assume additional exposures and charge and collect from you the greater of an additional premium equal to 25% of the original premium and the actual amount due based upon any premium audit findings. You also expressly agree to pay any costs associated with our efforts to collect any additional premium due from you. Under no circumstance will the minimum estimated premium be reduced as the result of any premium audit—the original premium represents a minimum premium for the Policy.

## SECTION VI — DEFINITIONS

A. "Accident" means an incident, event, or circumstance which is unexpected and unintended from the standpoint of any Insured.

B. "Advertising Injury" means injury arising out of one or more of the following offenses:

1. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

2. Oral or written publication of material that violates a persons right of privacy;

3. Misappropriation of advertising ideas or style of doing business; or

4. Infringement of copyright, trademark, patent, title, or slogan.

C. "Agreed Settlement" means a settlement and/or release of liability signed and/or authorized in writing by the Insurer.

D. "Application" means the application for insurance coverage form, and any information provided therewith, completed by or for or on behalf of the Insured requesting insurance coverage from the Insurer.

E. "Auto" means a land motorized vehicle, trailer, or semi-trailer designed for travel on public roads, including any attached machinery or equipment. Auto does not include Mobile Equipment.

F. "Bodily Injury" means physical injury to a person's body, including death, but shall exclude:

1. Sickness or disease sustained by any person or death resulting there from; and

2. Mental or emotional distress, mental anguish, humiliation, embarrassment, mental anxiety, or other emotional, psychological or mental injury, or any physical manifestation thereof.

G. "Claim(s)" means any demand for Damages, including a written demand, a civil action, Suit, or institution of arbitration proceeding.

Prime Insurance v. Zito, et al.
00049

H.  "Claim Expenses" mean:

1.  All fees, costs, and expenses charged by any lawyer or other service provider designated by the Insurer to represent the Insured; and

2.  All other fees, costs, and expenses, including the Insurer's own internal fees, costs, and expenses, or those of an affiliate, resulting from the investigation, adjustment, defense, and appeal of a Claim, as authorized by the Company.

The determination of the Insurer as to the reasonableness of Claim Expenses shall be conclusive on the Insured.  All Claim Expenses reduce the available Policy limits.

I.  "Damages" means a compensatory sum, monetary judgment, award, or settlement an Insured is or may reasonably become legally obligated to pay as the result of an Accident, but does not include fines or statutory penalties, sanctions, whether imposed by law or otherwise, punitive, exemplary, treble damages, or any multiplied portion of a compensatory award, nor the return or restitution of legal fees, costs, and expenses.

J.  "Declarations" means the summary of coverage provided in conjunction with this Policy setting forth essential terms that are expressly deemed a part of this Policy.

K.  "Endorsement" means any additional coverage or limitation of coverage contained in any attachment or addendum to this Policy.  Any Endorsement is an indispensable and indivisible part of this Policy.

L.  "Impaired Property" means tangible property, other than Your Product or Your Work, that cannot be used or is less useful because:

1.  It incorporates Your Product or Your Work that is known or thought to be defective, deficient, inadequate, or dangerous; or

2.  You have failed to fulfill the terms of a contract or agreement.

If such property can be restored to use by:

1.  The repair, replacement, adjustment, or removal of Your Product or Your Work; or

2.  Your fulfilling the terms of the contract or agreement.

M.  "Hazardous Materials" means any nuclear, radioactive, toxic, or explosive material, substance, or waste, and any by-products thereof, and the explosive, toxic, and dangerous properties of such material, substance, or waste and any by-products thereof.

N.  "Limit(s) of Liability" means the maximum amount the Insurer will be obligated to pay for an otherwise covered Claim, including payment for Claim Expenses, Damages, or any other sums due under this Policy, the amount of which is set forth on the Declarations.

O.  "Loading" or "Unloading" means the handling of property:

1.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or Auto;

2.  While it is in or on an aircraft, watercraft, or Auto; or

3.  While it is being moved from an aircraft, watercraft, or Auto to the place where it is finally delivered, but Loading or Unloading does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or Auto.

Prime Insurance v. Zito, et al.
00050

P. "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   1. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

   2. Vehicles maintained for use solely on or next to premises you own or rent;

   3. Vehicles that travel on crawler treads; or

   4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      a. Power crane, shovels, loaders diggers, or drills; or

      b. Road construction or resurfacing equipment such as graders, scrapers, or rollers.

   5. Vehicles not described in paragraphs 1, 2, 3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      a. Air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting, and well servicing equipment; or

      b. Cherry pickers and similar devices used to raise or lower workers.

   6. Vehicles not described in paragraphs 1, 2, 3, or 4 above maintained primarily for purposes other than the transportation of person or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment, but will be considered Autos:

      a. Equipment designed primarily for:

         (1) Snow removal;

         (2) Road maintenance, but not construction or resurfacing; and

         (3) Street cleaning.

      b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      c. Air compressors, pumps and generators, including spraying, welding, building, cleaning, geophysical exploration, lighting, and well servicing equipment.

Q. "Personal Injury" means injury, other than Bodily Injury, arising out of one or more of the following offenses:

   1. False arrest, detention, or imprisonment;

   2. Malicious prosecution, discrimination, or civil rights violations, wrongful or retaliatory discharge;

   3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or service personnel;

   4. Oral or written publication of material that slanders or libels a person's or organization's goods, products, or services; or

   5. Oral or written material that violates a person's right of privacy.

R. "Policy" means the Policy issued by the Insurer to the Insured, including all Endorsements thereto.

Prime Insurance v. Zito, et al.
00051

S.  "Policy Period" means the period of time beginning on the "Effective Date," as stated on the Declarations, and ending on the earlier of the initial "Expiration Date," as stated on the Declarations, and any effective cancellation date pursuant to the terms of the Policy regardless of any renewal. Any renewal starts a new Policy Period for the renewal term from the "Effective Date" of such renewal and ending on the earlier of any effective cancellation date of the renewal pursuant to the terms of the renewed Policy and the "Expiration

T.  "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, Hazardous Materials or any other waste, including materials to be recycled, reconditioned, or reclaimed.

U.  "Property Damage" means:

1.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically damaged. All such loss shall be deemed to occur at the time of the Accident that caused it.

V.  "Retroactive Date" means any date expressly identified on the Declarations as the Retroactive Date. An expressly identified Retroactive Date shall be considered the Effective Date for determining the Policy Period. If no Retroactive Date is expressly identified on the Declarations, no coverage is provided for any period of time before the Effective Date.

W.  "Self-Insured Retention" or "SIR" means the amount set forth on the Declarations that the Insured is required to pay for each and every Claim for any combination of Damages and/or Claim Expenses otherwise covered under this Policy. The Insured will pay 100% of the Self-Insured Retention before any payment is due pursuant to the terms of this Policy.

X.  "Sub-limit" means a limited portion of the aggregate Limit of Liability under the Policy, identified for a specific Accident, person, or type or nature of loss covered under this Policy. Sub-limits effective under the Policy are identified on the Declarations or in Endorsements attached to the Policy. All Sub-limits are expressly subject to and deplete any other applicable Sub-limit(s) and the aggregate Limit of Liability. Sub-limits are within, and not in addition to, the aggregate Limit of Liability. Both Sub-limits and any aggregate Limit of Liability are reduced by Claims Expenses. Specific Sub-limits are further defined as follows:

1.  Any "Per Person" Sub-limit limits the portion of the aggregate Limit of Liability the Insurer may be obligated to pay as the result of Bodily Injury and/or Property Damage sustained by any person involved in an otherwise covered Accident to such person, aggregated with all Damages claimed by other person(s) through, or as a result of, the Bodily Injury and/or Property Damage sustained by the person involved in the Accident, including but not limited to Claims for loss of consortium or other Damages by immediate family members, relatives, or third parties.

2.  Any "Per Accident" Sub-limit limits the portion of the aggregate Limit of Liability the Insurer may be obliged to pay as the result of Bodily Injury and/or Property Damage claimed by all persons as a result of an Accident. Any Per Accident Sub-limits are expressly subject to any applicable Per Person Sub-limits.

Y.  "Suit" means any proceeding seeking recovery for Damages for Bodily Injury or Property Damage, including:

1.  Any civil action filed in a court of law;

2.  An arbitration proceeding to which you must submit or do submit with our consent; or

3.  Any other alternative dispute resolution proceeding to which you submit with our consent.

Prime Insurance v. Zito, et al.
00052

Z.  "Your Product" means:

1.  Any goods or products other than real property, manufactured, sold, handled, distributed, or disposed of by:

    a.  You;

    b.  Others trading under your name; or

    c.  A person or organization whose business or assets you have acquired.

2.  Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products;

3.  Warranties or representations made at anytime with respect to the fitness, quality, durability, performance, or use of any item identified in subparagraphs 1 and 2 above; and

4.  The providing or failure to provide warnings or instructions regarding any item identified in subparagraphs 1 and 2 above.

Your Product does not include vending machines or other property rented to or located for the use of others but not sold.

AA. "Your Work" means:

1.  Work or operations performed by you or on your behalf;

2.  Materials, parts, or equipment furnished in connection with such work or operations;

3.  Warranties or representations made at anytime with respect to the fitness, quality, durability, performance, or use of any item identified in subparagraphs 1 or 2 above; and

4.  The providing of or failure to provide warnings or instructions regarding any item identified in subparagraphs 1 and 2 above.

## SECTION VII— REIMBURSEMENT

In the event we provide a defense for an Insured under the Policy and it is at any time determined that any Claim or theory of recovery for which a defense has been provided by us is not covered under the Policy, we expressly reserve the right to seek reimbursement of any Damages and/or Claim Expenses associated with any such Claim or theory of recovery from the Insured, including reimbursement on a prorate basis for that portion of any Claim or theory of recovery not covered if multiple Claims or theories of recovery have been asserted.

## SECTION VIII — CONFORMITY TO STATUTE & SEVERABILITY

Any portions of this Agreement that are not in conformity with federal, state, or local laws are to be deemed amended to conform to such laws. Further, the provisions of this Agreement are severable. If any portion, provision, or part of this Agreement is held, determined, or adjudicated to be invalid, unenforceable, or void for any reason whatsoever, each such portion, provision, or part shall be severed from the remaining portions, provisions or parts of this Agreement and shall not affect the validity or enforceability of any remaining portions, provisions, or parts.

## SECTION IX — MUTUAL AFFIRMATION

Pursuant to the signature, facsimile or otherwise, appearing on the Application, quote, warranty form, Policy, or any other document provided to the Insurer to obtain insurance coverage, the parties affirm that all provisions serve to embody and articulate the entire agreement between the parties hereto, and that the parties unqualifiedly accept and agree to abide by the terms and conditions of the Policy.

Prime Insurance v. Zito, et al.
00053

## SECTION X — GOVERNING LAW

This Agreement is entered into in the State of Utah and the Agreement, and any rights, remedies, or obligations

### SECTION XI — FORUM SELECTION AND CONSENT TO JURISDICTION

The Insured represents that they have purposefully directed their actions to procure the insurance services of the Insurer contained in this Policy and has and/or will make continuous and systematic requests for the Insurer's services on their behalf, and acknowledges that the Insurer's principal place of business is Utah. The Insured acknowledges that by entering into this Agreement the Insured is deemed to be transacting business within the State of Utah, and the Insured consents to the jurisdiction of the courts of the State of Utah to hear and decide claims or disputes arising between the parties related to coverage issues and any payments due the Insured under the Policy.

Prime Insurance v. Zito, et al.
00054

EXHIBIT 2

**Replacing: NEW**



**AMERICAN EMPIRE SURPLUS LINES**
Insurance Company

A DELAWARE STOCK COMPANY ADMINISTRATIVE OFFICES CINCINNATI OHIO

# DECLARATIONS
# COMMERCIAL
# GENERAL LIABILITY POLICY

**Policy No: 7CG23139**

LENOX INSURANCE
#445A

Named Insured

**EPA, LLLP dba Level Acres Mobile Home Estates**
**1255 North Eufaula Avenue**
**Eufaula, Alabama 36027**

Mailing Address

Policy Period From:  March 3, 2007       To:  March 3, 2008       12:01 AM Standard Time at your mailing address shown above

**IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY**

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Products—Completed Operations) | $ | 1,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ | 1,000,000 |
| PERSONAL AND ADVERTISING INJURY LIMIT | $ | 1,000,000 |
| EACH OCCURRENCE LIMIT | $ | 1,000,000 |
| FIRE DAMAGE LIMIT    Any One Fire | $ | 50,000 |
| MEDICAL EXPENSE LIMIT    Any One Person | $ | 5,000 |

Amount and Basis of Deductible $   500            per claim for all coverages per attached endorsement

## FORM OF BUSINESS

__ Individual  ___ Partnership  __ Joint venture  _X_  Organization (Other than Partnership or Joint Venture)

Business Description:____   Mobile Home Park and Court

Location of All Premises You Own Rent or Occupy:   1255 N. Eufaula Avenue; Eufaula, Alabama 36027

| CLASSIFICATION | CODE NO | PREMIUM BASIS | RATES PR/CO    ALL OTHER | ADVANCE PREMIUMS PR/CO    ALL OTHER |
|---|---|---|---|---|
| | | **AS PER ATTACHED SCHEDULE** | | |

The foregoing discloses all hazards Insured hereunder known to exist at the effective date of this policy unless otherwise stated herein

Premium payable at Inception $ ~~—————~~ M&D  + $~~————~~ Policy Fee

a) Area   c) Total Cost   m) Admissions   p) Payroll   s) Gross Sales   u) Units

**AUDIT PERIOD**   ANNUAL (Unless Otherwise Stated)

FORMS APPLICABLE (Insert No and Edition Date)
**AS PER ATTACHED SCHEDULE**

_Vincent A. Sasso_
Authorized Representative

**March 6, 2007**
DATE

SL 0272A(3/96)

Prime Insurance v. Zito, et al.
00055

# SCHEDULE OF FORMS AND ENDORSEMENTS

**THE FORMS AND ENDORSEMENTS LISTED BELOW ARE ATTACHED TO AND MADE PART OF THIS INSURANCE POLICY.**

| | |
|---|---|
| SL0272 (3/96) | Commercial General Liability Declarations |
| SL0273 (8/04) | Commercial General Liability Jacket |
| CG0001 (10/01) | Commercial General Liability Coverage |
| SL0271 (4/87) | Commercial General Liability Schedule |
| SL0529 (6/03) | Compliance with U.S Economic Sanctions |
| SL0546 (10/06) | Certificates of Insurance |
| SL0270 (9/96) | Deductible Liability Insurance |
| CG2147 (7/98) | Employment Related Practices Exclusion |
| SL0520 (4/03) | Exclusion – Mold, Spores Or Fungus |
| SL0367 (2/94) | Exclusion – Lead Contamination |
| SL0530 (7/03) | Exclusion – Silicosis |
| CG2250(11/88) | Exclusion Failure to Supply |
| SL0471(1/98) | Exclusion – Dog |
| SL0341(3/92) | Exclusion – Punitive or Exemplary Damages |
| SL0540(7/05) | Exclusion – Injury to Independent Contractors |
| SL0342(1/05) | Exclusion - Operations of Independent Contractors |
| SL0297(4/97) | Explanatory Policy Prem. |
| CG2149 (9/99) | Total Pollution Exclusion |

| | |
|---|---|
| CG2229(11/85) | Exclusion – Property Entrusted |
| CG2144(7/98) | Limitation of Coverage to Premises or Projects |
| SL0298 (8/02) | Absolute Asbestos Exclusion |
| CG0067 (3/05) | Exclusion – Email Facsimile, Phone and Mail Solicitation |
| SL0457 (12/94) | Minimum Earned Premium |
| CG2174 (12/02) | Exclusion of Certified Acts Of Terrorism |
| SL0528 (1/06) | Rejection – Disclosure Pursuant to Terrorism Insurance Act 2002 |
| CG2187(1/07) | Conditional Exclusion of Terrorism |
| SL0560(1/07) | Notice to Policy Holders |

Prime Insurance v. Zito, et al.
00056



# COMMERCIAL
## GENERAL LIABILITY SCHEDULE

Policy No____7CG23139_____

| CLASSIFICATION | CODE NO | PREMIUM BASIS | RATE | ADVANCED PREMIUM | |
|---|---|---|---|---|---|
| | | | | PR/CO | ALL OTHER |
| Mobile Home Park and Court | 46202 | (s) ▓▓▓▓ | ▓▓▓ | Incl. | ▓▓▓ |
| Mini Warehouse | 18991 | (s) ▓▓▓▓ | ▓▓▓ | Incl. | ▓▓▓ |
| | | | TOTAL | $ 4,993.00 M&D | |

The foregoing discloses all hazards insured hereunder known to exist at the effective date of the policy unless otherwise stated herein

SL 0271 (04/87)

Prime Insurance v. Zito, et al.
00057

**EXHIBIT 3**

# PARSONS, LEE & JULIANO, P. C.

ATTORNEYS AT LAW

300 PROTECTIVE CENTER

2801 HIGHWAY 280 SOUTH

BIRMINGHAM, ALABAMA 35223-2480

TELEPHONE 205-326-6600

FACSIMILE 205-324-7097

ROBERT E. PARSONS
JASPER P. JULIANO
MARCUS W. LEE
MARDA W. SYDNOR +
DAVID A. LEE
DEBORAH ANN WAKEFIELD
DOROTHY A. POWELL*
JOHN M. BERGQUIST
PAUL J. DeMARCO
JAMES A. WYATT, III
PAUL M. JULIANO
MILES E. GRESHAM, JR.

+ALSO ADMITTED IN VIRGINIA
*ALSO ADMITTED IN MISSISSIPPI

March 27, 2008

MAILING ADDRESS:

POST OFFICE BOX 530630

BIRMINGHAM, ALABAMA 35253-0630

TAX I.D. #63-0922938

www.pljpc.com

**VIA FACSIMILE (513) 369-3062**
American Empire Surplus Lines
**ATTENTION: CLAIMS DEPARTMENT**
580 Walnut, 10th Floor
Cincinnati, Ohio 45202

Re:   Bernie & Katie Keys v. Level Acres Mobile Home Estates, et al.
Our File:   329-1

TO WHOM IT MAY CONCERN:

This firm represents The Prime Insurance Syndicate, Inc. in connection with the coverage issues raised by a lawsuit styled *Bernie Keys, an individual, and Katie Keys, an individual v. Level Acres Mobile Home Estates, et al.*,  CV-2007-49, which is pending in the Circuit Court of Barbour County, Alabama, Eufaula Division.  Attached to this letter is a copy of the complaint.  This is to demand that American Empire Surplus Lines participate in the defense of Level Acres Mobile Home Estates with respect to this claim.

The Prime Insurance Syndicate, Inc. has retained Mr. Robert G. Poole of the law firm of Whittelsey, Whittelsey & Poole, P.C. to defend this lawsuit.  Please contact me immediately to discuss.  I look forward to hearing from you.

Very truly yours,

PARSONS, LEE & JULIANO, P.C.

Dorothy A. Powell

DAP/sph
Attachment

cc:   Mr. David McBride (w/o enc.)
       Claim No.  CP06031910027

       Mr. Robert G. Poole (w/o enc.)